552 A.2d 560

William Frederick RUNGE

v.

STATE of Maryland.

No. 527, Sept. Term, 1988.

Court of Special Appeals of Maryland.

Jan. 17, 1989.

Patrick D. Hanley, Assigned Public Defender of Towson (Alan H. Murrell, Public Defender, of Baltimore, on the brief), for appellant.

Mary Ellen Barbera, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and John L. Scarborough, State's Atty. for Cecil County, on the brief of Elkton), for appellee.

Submitted before BISHOP, ALPERT and ROBERT M. BELL, JJ.

ROBERT M. BELL, Judge.

Having been convicted by a jury in the Circuit Court for Cecil County of three counts of sexual child abuse, William Frederick Runge, appellant, was sentenced to three concurrent 15 year terms of imprisonment. His appeal from the judgments thus entered raises six issues:

1. Did the court below commit error in limiting appellant's access to the Department of Social Services' file to an in-camera inspection by the court?

2. Did the court below commit error in determining that the array of jurors was selected in accordance with law?

3. Did the court below commit error in propounding a leading question to Jennie Lee Runge?

4. Did the court below commit error in eliciting hearsay testimony concerning a prior complaint of abuse by one of the children?

5. Was appellant denied a fair trial by remarks made by the trial judge during the opening statement of defense counsel?

6. Was the evidence sufficient to sustain guilty verdicts? Finding merit in the issues raised by questions 1 and 5, we will reverse and remand for a new trial. Because they may recur on retrial, for the guidance of the trial judge, we will address each of the remaining issues raised by appellant except issue # 2.

## 1.

Maryland Code Ann. Art. 88A § 6(b) provides:

(b) *Child abuse or neglect.*—Except as otherwise provided in Title 5, Subtitle 9 of the Family Law Article [1], all records and reports concerning child abuse or neglect are confidential, and their unauthorized disclosure is a criminal offense subject to the penalty set out in subsection (e) of this section. Information contained in reports or records concerning child abuse or neglect may be disclosed only:

(1) Under a court order;

(2) To personnel of local or State departments of social services, law enforcement personnel, and members of multidisciplinary case consultation teams, who are investigating a report of known or suspected child abuse or neglect or who are providing services to a child or family that is the subject of the report;

(3) To local or State officials responsible for the administration of the child protective service as necessary to carry out their official functions;

---

**1.** Subtitle 9 is captioned "Child Abuse". Its purpose ... is to protect children who have been the subject of abuse by:

(1) Mandating the reporting of any suspected abuse;

(2) Giving immunity to any individual who reports, in good faith, a suspected incident of abuse;

(3) Requiring prompt investigation of each reported suspected incident of abuse; and

(4) Causing immediate, cooperative effort by the responsible agencies on behalf of children who have been the subject of abuse.

Maryland Family Law Code Ann. § 5–902. This subtitle was repealed by Acts 1987, ch. 635, § 1, effective July 1, 1988. It was, therefore, in effect at the time this case was tried.

(4) To a person who is the alleged child abuser or the person who is suspected of child neglect if that person is responsible for the child's welfare and provisions are made for the protection of the identity of the reporter or any other person whose life or safety is is likely to be endangered by disclosing the information;

(5) To a licensed practitioner who, or an agency, institution, or program which is providing treatment or care to a child who is the subject of a report of child abuse or neglect; or

(6) To a parent or other person who has permanent or temporary care and custody of a child, if provisions are made for the protection of the identity of the reporter or any other person whose life or safety is likely to be endangered by disclosing the information.

The portion of the statute pertinent to appellant's first argument on appeal is subsection (b)(4).

Prior to trial, appellant filed a Motion For Subpoena For Tangible Evidence Before Trial, directed to the Cecil County Department of Social Services and requesting production of "all records in any way relating to William F. Runge, Iris Runge, Dan Runge, Jennifer Rungie [sic] and Jamie Runge." Although the record does not reflect that the subpoena was issued pursuant to court order, the Cecil County Department of Social Services moved to quash the subpoena, citing Maryland Code Ann. Art. 88A, § 6(a) and (b) and Maryland State Government Code Ann. § 10–616 as authority. The court set a hearing on both motions. At that hearing, the State suggested that the court review the records in camera and determine which, if any of them, should be disclosed to appellant. In spite of appellant's objection to that procedure, the court agreed and ordered the complete Social Services file turned over to it for such review. At yet another hearing, held after the court's in camera review, relying upon *Pennsylvania v. Ritchie*, 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987), and the guidelines it enunciated, and conducted on the record, the court released certain of the records to appellant. This was done

by reading portions of the documents verbatim into the record. The court characterized the disclosure it made as "essentially the whole file." The court also retained the file for further review, should the need for further disclosure arise during trial.

■ Appellant argues that the court's ruling and the procedure it adopted were error.[2] Relying upon the Maryland law, specifically subsection 6(b)(4), he asserts that *Pennsylvania v. Ritchie* is inapposite: In *Ritchie*, the statute did not provide for disclosure to the alleged child abuser, while the Maryland statute does. Since, therefore, under the Maryland statute, an alleged child abuser is entitled to disclosure, appellant continues, once that fact has been determined, "[t]he court's in-camera inspection should have been limited to safeguarding from disclosure the identity of the reporter(s) of the abuse."

The State, on the other hand, contends that *Ritchie* is dispositive of this issue and, hence, that the in camera review by the judge was not just a proper procedure, it was the mandated one. Of particular significance to the State's analysis are: (1) the following discussion by the Supreme Court:

> A defendant's right to discover exculpatory evidence does not include the unsupervised authority to search through the Commonwealth's files. Although the eye of an advo-

---

**2.** Appellant did not seek to have the file sealed and made a part of the record and, indeed, successfully objected when the State moved the entire file into evidence. Consequently, the DSS file is not a part of the record on appeal. The State perceives this fact to render the issue unreviewable, presumably on the basis that this Court cannot determine, in the absence of the file, whether appellant has been prejudiced by the procedure adopted. We do not agree. The critical issue in this appeal is the interpretation of the Maryland statute and, consequently, appellant's entitlement, as a matter of right, to an unfiltered review, of the material in the DSS file. If we answer that question in the affirmative, we must resolve the harmless error issue against the State. The court's judgment as to what is pertinent to appellant for purposes of cross-examining the State's witnesses may not replace that of the advocate. *See, e.g. Carr v. State,* 284 Md. 455, 397 A.2d 606 (1979); *Leonard v. State,* 46 Md.App. 631, 637–39, 421 A.2d 85 (1980), *aff'd,* 290 Md. 295, 429 A.2d 538 (1981).

cate may be helpful to a defendant in ferreting out information, this Court has never held—even in the absence of a statute restricting disclosure—that a defendant alone may make the determination as to the materiality of the information. Settled practice is to the contrary. In the typical case where a defendant makes only a general request for exculpatory material under *Brady v. Maryland,* 373 U.S. 83 [83 S.Ct. 1194, 10 L.Ed.2d 215] (1963), it is the State that decides which information must be disclosed. Unless defense counsel becomes aware that other exculpatory evidence was withheld and brings it to the court's attention, the prosecutor's decision on disclosure is final. Defense counsel has no constitutional right to conduct his own search of the State's files to argue relevance,

480 U.S. at 59, 107 S.Ct. at 1003 (Citations and footnote omitted); and (2) its perception that, by virtue of the statute's use of the word "may", disclosure to an alleged child abuser is permitted, rather than required.

Appellant is correct, the statute at issue in this case and the statute in *Ritchie* are different. That being so, the facts *sub judice* and the facts in *Ritchie* are necessarily also different, and significantly so. In *Ritchie,* although it specifically did not provide for disclosure of the information in the Social Services file to one accused of sexual offenses against children, the statute did provide for disclosure to other persons or agencies under certain circumstances.[3] Of particular relevance for our purposes, the statute provided

---

3. The statute at issue in *Ritchie* was Pa.Stat.Ann., Title 11, § 2215(a), which provides:

§ 2215. *Confidentiality of records*

(a) Except as provided in section 14, reports made pursuant to this act including but not limited to report summaries of child abuse made pursuant to section 6(b) and written reports made pursuant to section 6(c) as well as any other information obtained, reports written or photographs or x-rays taken concerning alleged instances of child abuse in the possession of the department, a county children and youth social service agency or a child protective service shall be confidential and shall only be made available to:

for disclosures "to a court of competent jurisdiction pursuant to a court order."

---

(1) a duly authorized official of a child protective service in the course of his official duties, multidisciplinary team members assigned to the case, and duly authorized persons providing services pursuant to section 17(8).

(2) A physician examining or treating a child or the director or a person specifically designated in writing by such director of any hospital or other medical institution where a child is being treated, where the physician or the director or his designee suspect the child of being an abused child.

(3) A guardian ad litem for the child.

(4) A duly authorized official or agent of the department in accordance with department regulations or in accordance with the conduct of a performance audit as authorized by section 20.

(5) A court of competent jurisdiction pursuant to a court order.

(6) A standing committee of the General Assembly, as specified in section 24.

(7) The Attorney General.

(8) Federal auditors if required for Federal financial participation in funding of agencies provided that Federal auditors may not have access to identifiable reports.

(9) Law enforcement officials in the course of investigating cases of (i) homicide, sexual abuse or exploitation, or serious bodily injry as perpetrated by persons whether related or not related to the victim; (ii) child abuse perpetrated by persons who are not family members or (iii) repeated physical injury to a child under circumstances which indicate that the child's health or welfare is harmed or threatened.

(10) Law enforcement officials who shall receive reports of abuse in which the initial review gives evidence that the abuse is homicide, sexual abuse or exploitation, or serious bodily injury perpetrated by persons whether related or not related to the victim, or child abuse perpetrated by persons who are not family members. Reports referred to law enforcement officials shall be on such forms provided by and according to regulations promulgated by the department. For purposes of section 15(a) "serious bodily injury" means bodily injury which creates a substantial risk of death or which causes serious permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ.

(11) County commissioners, to whom the department shall forward specific files upon request, for review when investigating the competence of county children and youth employees.

(12) A mandated reporter of child abuse as defined in section 4 who made a report of abuse involving the subject child. Provided, however, That the information permitted to be released to such mandated reporter shall be limited to the following:

(i) the final status of the report following the investigation, whether it be indicated, founded or unfounded; and

(ii) any services provided, arranged for, or to be provided by the child protective service to protect the child from further abuse.

Faced with a statute which did not entitle him to access to information in the Social Service's file, Ritchie sought disclosure of the information on the basis of the Sixth Amendment rights of confrontation and compulsory process. Without examining the entire file, the trial judge denied Ritchie's motion, thus refusing to order disclosure of the files. On appeal, the Superior Court vacated the conviction and remanded the case for further proceedings to determine whether Ritchie was entitled to a new trial. Although it held that the full disclosure sought by Ritchie was not required by the confrontation clause, it concluded that he was entitled to the verbatim statements made by the victim and that his lawyer was entitled to access to the entire file for the limited purpose of allowing him to argue the relevance of the information contained in it to Ritchie's right to a new trial. The disclosures were to follow the court's in camera review of the confidential material in the file.

The Supreme Court of Pennsylvania agreed that the conviction must be vacated and the case remanded for determination whether a new trial was necessary. That court, however, was also of the view that "by denying access to the CYS file, the trial court order had violated both the Confrontation and the Compulsory Process Clauses of the Sixth Amendment...." 480 U.S. at 38, 107 S.Ct. at 989. Thus, it held that both Ritchie and his counsel were entitled to review the entire file in their search for useful evidence.

The issue thus presented to the Supreme Court was whether, when a statute does not provide for disclosure of information to an accused, but does not totally prohibit disclosure, the accused is nevertheless entitled to obtain disclosure of the information pursuant to the confrontation clause and the compulsory process clause. And it was in that context that the Supreme Court rejected appellant's arguments and permitted the relevance of the information sought to be determined by the court after an in camera review. The issue which this case presents was not, nor could it have been, presented in *Ritchie.*

The Maryland statute clearly provides for disclosure to one accused of child abuse. The issue presented here, therefore, is whether the disclosure is mandatory and, if so, whether there are any restrictions other than the safeguarding of the identity of the reporter(s) of the information, placed upon that disclosure. The answer to these questions requires application of the rules of statutory construction, rather than the confrontation or compulsory process clauses. We approach this task by considering the plain language of the statute, in light, however, of its purpose. *Kaczorowski v. City of Baltimore*, 309 Md. 505, 513, 525 A.2d 628 (1987).

Section 6(b) is "a recognition that when the information is relevant to some other purpose", *Freed v. Worcester County*, 69 Md.App. 447, 454, 518 A.2d 159 (1986), it may be disclosed only to the persons and agencies enumerated in the statute. More to the point, however, it includes an enumeration of the persons and agencies to which the information may only be disclosed as well as the purposes or reason for the disclosure; hence, the statute itself supplies the other purposes for the disclosure. Thus, in the case of subsection (4), the disclosure may only be made "if the alleged child abuser is responsible for the child's welfare." [4] If, on the other hand, the information is not relevant for the purpose prescribed by the statute, disclosure is neither required nor permitted.

█ The statute places no conditions upon a disclosure made pursuant to its terms; beyond that necessary to protect the sources of the information, it does not explicitly provide for, nor do its terms imply that it is desirable that there be, court screening of the disclosure via an in camera inspection. Indeed, that the statute contains a provision for disclosure to the court pursuant to court order tends to negate such an interpretation. Consequently, we hold that,

---

4. The parties have not raised the question whether appellant is, or was, responsible for his children's welfare; neither will we.

no court filtering, is required or permitted, except that necessary to protect the sources of the information.

■ The phrase in § (b), "[i]nformation contained in reports or records concerning child abuse or neglect may be disclosed only", is interpreted by the State as being permissive, undoubtedly because of its use of the word "may". While it is true that the word "may" ordinarily connotes only directive intent, the context of the statute in which it is used may be such as to require that it be interpreted as mandatory. *See Resetar v. State Bd. of Education,* 284 Md. 537, 547–50, 399 A.2d 225 (1979); *Blumenthal v. Clerk of Cir. Ct.,* 278 Md. 398, 408–09, 365 A.2d 279 (1976); *Tranen v. Aziz,* 59 Md.App. 528, 535, 476 A.2d 1170 (1984); *Pope v. Secretary of Personnel,* 46 Md.App. 716, 717–19, 420 A.2d 1017 (1980), *cert. denied,* 289 Md. 739 (1981). That is the case here. It may not seriously be contended that a disclosure ordered by the court may be complied with, or not, at the discretion of the agency or that the question of directory or mandatory intent is to be determined on a category by category basis. Viewing the statute in this manner, and particularly in light of the use of the word "only" as a limitation upon the categories of persons to whom disclosure is permitted, leads inexorably to the conclusion that the disclosure is mandatory once it is determined that the person or agency by whom disclosure is sought has need of the information for a relevant purpose, as prescribed by the statute. A construction of the statute as directory only would, as we have intimated, render meaningless the requirement that such information be disclosed "under court order." *See* § 6(b)(1).

■ Applying this interpretation to the facts *sub judice* produces a clear result. Appellant is entitled to the information in the records and reports in the Department of Social Services' file by virtue of subsection 6(b)(4), not subsection 6(b)(1). Pursuant to that subsection, the extent of appellant's entitlement is clear: disclosure of the information contained in reports and records concerning child

abuse. This being so, the only basis for court intervention is to determine appellant's entitlement and to ensure that the sources of the information are safeguarded; court intervention to determine the extent of the disclosure of the information is not only unwarranted, but not permitted. The court was asked to do more than determine appellant's entitlement to disclosure; it was asked to determine what information was to be disclosed. To the extent that the court went beyond determining appellant's entitlement to disclosure, it erred[5] in its interpretation of the statute.

### 2.

■ Appellant also challenges the propriety of remarks made by the trial judge during his opening statement to the jury. In order to assess the merit of this challenge, it is necessary to place the matter in procedural and factual context.

Appellant waived opening statement at the beginning of trial, preferring to address the jury after the State's case had been completed. During his opening statement, the following occurred:

MR. THOMPSON: [Defense counsel] One thing we've got here, as in almost every state I know of in the United States, is the adversary system, where the State is representing the interests of the community, ... so their job, the State's job, is to put on evidence that would favor a conviction.

MR. KEMP [Assistant State's Attorney]: Your Honor, I object to that remark. The State puts on evidence—

THE COURT: I'll sustain that.

MR. THOMPSON: They are advocates.

MR. KEMP: Your Honor—

THE COURT: *It is not the obligation of the State. The State has an obligation to be fair and impartial and*

---

**5.** Ordinarily an in camera inspection of the file by the court is necessary to ensure compliance with the legislative mandate that the sources of the information be safeguarded.

*put on the evidence on which they submit to the jury, and the jury determines whether a person is guilty or not.*

MR. THOMPSON: Your Honor, the State is an advocate.

THE COURT: I've already ruled. Continue to make your speech.

MR. THOMPSON: Your Honor, I have to approach the bench.

THE COURT: *So what is new?* Let's get up here. (Emphasis added)

At the bench conference the following colloquy occurred:

THE COURT: That was not a correct statement.

MR. KEMP: That is not a proper statement.

THE COURT: Let him make his opening statement. Will you shut up? You don't have to comment here on things like that.

MR. THOMPSON: Your Honor, at this time I would move for a mistrial and the reason is, I say that with all due respect to the Court, the Court stated in the presence of the jury throughout the trial, the Court has indicated the position is in favor of the State and against the Defendant, and I do not think at this moment that my client can in any way get a fair trial.

I am trying as best as I can to represent my client, and in front of the jury, including examination of the children, I think the Court has taken over questioning and I think the Court has exceeded what I consider and what I think the law considers the fair balance of taking over the questions when I—let me continue.

THE COURT: You'll continue. You can't shut up.

MR. THOMPSON: That's not fair.

THE COURT: You've been trying to make a mockery out of this trial. You are objecting all the time and jumping up and down.

MR. THOMPSON: And you've made that very clear to the jury.

THE COURT: No, I have not. I've made it clear to you.

MR. THOMPSON: Let me continue.

MR. KEMP: Let me make one comment.

THE COURT: This is a very difficult trial because everybody is fighting and you are fighting the whole time.

MR. THOMPSON: I think at this point the jury would perceive your remarks as being very inflammatory to the defense and pro state, and I would ask for a mistrial at this time.

THE COURT: The Court does not find any merit in this ridiculous argument. The court has been fair on both sides, besides, Mr. Thompson, both of you are acting like children in front of the jury, yelling and jumping up and approaching the bench, and the same way with Mr. Runge. All three of you. If there is any adverse effect in conducting of this trial—and I'm not just referring to you, but referring to all three of you, I am having a time between you three people.

And that statement you say is entirely incorrect and Mr. Kemp was right in objecting to it. Go back and make your statement. That is denied.

MR. THOMPSON: They are an advocate for the State. I can say that.

THE COURT: Well, you can argue it.

Relying upon the foregoing, appellant argues:

The comments from the bench in suggesting that the prosecutor had a duty to be fair and impartial, unfairly minimized the prosecutor's role as an advocate in the proceeding and, in the eyes of the jury, elevated the prosecutor's status above that of defense counsel. The prejudice was exacerbated further by the Court's subsequent caustic remark to the defense counsel, implying that defense counsel was an obstructionist. As in *Spencer [v. State,* 76 Md.App. 71, 543 A.2d 851 (1988) ], ..., these remarks "cast a dark shadow over Defendant and the entire defense case" and reversal is required.

Notwithstanding the State's arguments to the contrary, we agree with appellant. We must answer the same question

that was presented in *Spencer*, *i.e.*, "whether under the totality of the circumstances, the judge's behavior was 'so prejudicial as to deprive defendant ... of a fair, as opposed to a perfect trial.'" 76 Md.App. at 78, 543 A.2d 851, quoting *United States v. Beaty*, 722 F.2d 1090, 1093 (3d Cir.1983). In answering this question, we necessarily take account of the fact that a trial judge, by virtue of his position, has tremendous influence over the jury. 76 Md. App. at 77, 543 A.2d 851; *See United States v. Hickman*, 592 F.2d 931, 933 (6th Cir.1979). In this case, the trial judge did much more than rule on the State's objection to the pertinent comment in appellant's opening statement; rather, he instructed the jury that "the State has an obligation to be fair and impartial". This had the effect of enhancing the position of the State and its role in the trial. And not only did he not balance that instruction with one concerning the obligation of defense counsel, but when defense counsel asked to approach the bench, he stated, in what can only be described as a sarcastic manner, "so what is new?". This statement was made in front of the jury. Considering the judge's position in the trial and the fact that just as surely as is appellant's counsel, the State, is undoubtedly an advocate in criminal proceedings, there is little doubt that both remarks by the court were "likely to be devastating to the defense and, thus, should not have been made in front of the jury." While, unlike in *Spencer*, the court did not directly attack defense counsel as having committed misconduct in the conduct of the defense, his explanation of the State's role, coupled with his sarcastic remark to defense counsel, a remark which we agree suggested that appellant's counsel was an obstructionist, was at least as devastating to the defense as were the remarks in *Spencer*. We hold, therefore, that, under the totality of the circumstances, appellant was denied a fair trial. His convictions must be reversed.

Although we reverse appellant's convictions, the remaining issues, with the exception of the objection to the array,

may recur upon retrial. Therefore, we will briefly address those issues.

### Sufficiency of the Evidence

 This ground for appeal has not been preserved for our review since appellant's motion for judgments of acquittal, made at the close of all the evidence and characterized as a renewal of the prior motion, did not particularize, as required by Maryland Rule 4–324(a), all reasons why the motion should be granted. *See Warfield v. State,* 76 Md. App. 141, 147, 543 A.2d 885 (1988), *cert. granted,* 314 Md. 95, 548 A.2d 845 (1988). In view of our reversal on other grounds, however, we necessarily must address this issue because if the evidence is insufficient, there is no need to remand for a new trial. We hold that the evidence was sufficient. We explain.

Sexual child abuse is defined as:

... Any act that involves sexual molestation or exploitation of a child by a parent or other person who has permanent or temporary care or custody or responsibility for supervision of a child.

(ii) [and] includes, but is not limited to:

 1. Incest, rape, or sexual offense in any degree;

 2. Sodomy; and

 3. Unnatural or perverted sexual practices.

Maryland Code Ann. Art. 27, § 35A(a)(4). Physical injuries need not be sustained in order to prove sexual abuse.

Each of the three victims testified concerning the acts committed upon them by their father, which the State maintains are sufficient to sustain appellant's conviction. His son testified to repeated instances in which appellant sat on him, without pants or underwear, and while rubbing cream on his penis, touched his son on his chest, his inner thighs and his waist. The female victims, appellant's twin daughters, testified to their father having placed his "ding" [their term for his penis] in their mouths and to having kissed them in their genital areas. In addition, they testified that appellant forced them, at times, to touch his penis.

Given the definition of sexual abuse and applying that definition to the facts *sub judice*, makes clear that the evidence was more than sufficient to sustain sexual child abuse convictions.

The Court Intervention in the Questioning of Witnesses

Appellant complains of two instances in which the court intervened in the questioning of witnesses. The first occurred during the examination of one of the female victims. Upon her cross-examination and on redirect examination, the victim admitted that it was possible that the incidents of abuse of which appellant was charged could have occurred at one of the family's earlier residences, a location not alleged in the charging document. During redirect examination, the court asked the victim, over defense objection, whether her father did "nasty things" to her in the trailer. This solicited an affirmative response from the victim.

The second occasion occurred during the testimony of appellant's wife. During her direct examination, she was asked by the court "When was the first time you had any knowledge of anything may have happened concerning your children?", to which she responded, "My daughter Jamie told me when she was like 18 months. She was in diapers. And I didn't believe her." Appellant's objection to that testimony on hearsay grounds was overruled.

■ As to the former, appellant's only complaint is that the court erred by propounding leading questions to the witness. He acknowledges that such matters are normally committed to the sound discretion of the trial court but contends that, here, the trial court abused its discretion because it had the effect of supplying the witness with a false memory. We do not agree. In this case the victim was of tender years. Therefore, propounding the question did not, in our view, prejudice the rights of accused to a fair trial. *See Nash v. State*, 69 Md.App. 681, 688, 519 A.2d 769 (1987), citing *Culver v. State*, 1 Md.App. 406, 412, 230 A.2d 361 (1967).

As to the latter, appellant contends that the admission of hearsay evidence clearly prejudiced him in view of his defense that the State had programmed the children to testify to incidents of abuse. He asserts that the testimony elicited by the question undermined that defense.

As appellant concedes, his defense was predicated upon attacking the credibility of the young victims by suggesting that they had been programmed to testify as they did. By the time Mrs. Runge testified, appellant had already, pursuant to this defense, attempted to impeach the young witnesses' testimony. This permitted the State to attempt to rehabilitate those witnesses. One way to rehabilitate an impeached witness is by introducing a prior consistent statement, *see Craig v. State,* 76 Md.App. 250, 290–95, 544 A.2d 784 (1988), which is what the hearsay evidence constituted.

For these reasons, there was no error.

JUDGMENTS REVERSED; CASE REMANDED TO CIRCUIT COURT FOR CECIL COUNTY FOR NEW TRIAL.

COSTS TO BE PAID BY CECIL COUNTY.