566 A.2d 88

STATE of Maryland

v.

William Frederick RUNGE.

No. 28, Sept. Term, 1989.

Court of Appeals of Maryland.

Nov. 27, 1989.

Valerie J. Smith, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., both on brief), Baltimore, for petitioner.

José Felipé Anderson and Michael R. Braudes, Asst. Public Defenders (Alan H. Murrell, Public Defender, all on brief), Baltimore, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL, JJ.

ADKINS, Judge.

In this case we must decide the extent to which Maryland Code (1957, 1985 Repl.Vol., 1989 Cum. Supp.), Article 88A, § 6, subsection (b), requires disclosure of a county department of social services' files to a criminal defendant charged with child abuse.[1] We shall hold that this subsection, standing alone, does not entitle a defendant to any disclosure of those files.

I.

The grand jury for Cecil County indicted respondent, William Frederick Runge (Runge), on three counts of sexual child abuse. A jury sitting in the circuit court for that county convicted Runge on all three counts, and he was sentenced to three concurrent 15–year terms of incarceration.

Before his trial began, Runge sought to require the Cecil County Department of Social Services (DSS) to produce "all records in any way relating to" himself, his wife, and his three children, these children being the alleged victims of the abuse. DSS moved to quash the subpoena. Both sides relied on Article 88A, § 6. The circuit court judge decided that *in camera* review under the principles enunciated in *Pennsylvania v. Ritchie*, 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987), to determine which documents should be

---

1. The pertinent portions of the statutory text appear at p. 617, *infra.*

disclosed, would suffice. He obtained and reviewed the entire DSS file. He read into the record all portions of the file that he thought were material to Runge's defense. Also, the judge ordered the State and DSS to give the defense, either pretrial or when the witnesses testified, all prior statements made by the Runge children. Finally, the judge ordered that certain other documents, including copies of all letters written by Runge himself, be released to the defense immediately. The judge expressed the view that by virtue of these disclosures, the defense "got just about the whole [DSS] record, if not all the record."

As he made clear at the time of this ruling, Runge was satisfied neither with these disclosures nor with the process of *in camera* review of the file. After his convictions and sentencing, he appealed to the Court of Special Appeals. He persuaded that court that he was

> entitled to the information in the records and reports in the [DSS] file by virtue of subsection 6(b)(4) [of Article 88A].... Pursuant to that subsection, the extent of appellant's entitlement is clear: disclosure of the information contained in reports and records concerning child abuse. This being so, the only basis for court intervention is to determine [Runge's] entitlement and to ensure that the sources of the information are safeguarded; court intervention to determine the extent of the disclosure of the information is not only unwarranted, but not permitted.

*Runge v. State,* 78 Md.App. 23, 34–35, 552 A.2d 560, 566–567 (1989). The Court of Special Appeals reversed the trial court.[2]

## II.

Before us, Runge continues to insist that Article 88A, § 6 entitles him to full discovery of everything pertaining to his

---

**2.** The Court of Special Appeals also found reversible error in certain remarks made by the trial judge during the trial. *Runge v. State,* 78 Md.App. 23, 35–38, 552 A.2d 560, 567–568 (1989). We deal with that issue in Part III of this opinion.

case that is contained in the DSS file. He is adamant that he (or his lawyer) is entitled personally to inspect that file, without intervention of the trial court, except to the extent that protection of informants or others may require minor judicial redaction. He bases this entitlement solely on the Maryland statute; we need not concern ourselves with disclosure principles established in cases, such as *Ritchie, supra; United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985); *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *State v. Leonard*, 290 Md. 295, 429 A.2d 538 (1981), *affirming Leonard v. State*, 46 Md.App. 631, 421 A.2d 85 (1980); *Carr v. State*, 284 Md. 455, 397 A.2d 606 (1979); or with the Maryland Rules dealing with discovery. Nor need we address the State's argument that Runge has either not preserved a record adequate for review of the issue he presents, or that he somehow waived that issue at trial. We hold that the Court of Special Appeals misconstrued Article 88A, § 6.

The intermediate appellate court applied the appropriate rule: it approached its task "by considering the plain language of the statute, in light, however, of its purpose. *Kaczorowski v. City of Baltimore*, 309 Md. 505, 513, 525 A.2d 628 (1987)." *Runge*, 78 Md.App. at 33, 552 A.2d at 566. But it gave inadequate attention to the statute's legislative history and purpose, and thus misread the statutory text.

Subsection (a) of Article 88A, § 6 defines certain disclosures as a criminal offense. Subject to exceptions not here pertinent, it is unlawful for "any person or persons to divulge or make known ... any information concerning any applicant for or recipient of social services, child welfare services, cash assistance, food stamps, or medical assistance, directly or indirectly derived from the records, papers, files, investigations or communications of the State, county or city, or subdivisions or agencies thereof." Violation of this statute is a misdemeanor punishable by fine, imprisonment, or both. Section 6(e).

Subsection (b) focuses more narrowly on certain records:

Except as otherwise provided in Title 5, Subtitle 7 of the Family Law Article,[3] all records and reports concerning child abuse or neglect are confidential, and their unauthorized disclosure is a criminal offense subject to the penalty set out in subsection (e) of this section. Information contained in reports or records concerning child abuse or neglect may be disclosed only:

(1) Under a court order;

\* \* \* \* \* \*

(4) To a person who is the alleged child abuser or the person who is suspected of child neglect if that person is responsible for the child's welfare and provisions are made for the protection of the reporter or any other person whose life or safety is likely to be endangered by disclosing the information;

\* \* \* \* \* \*

(6) To a parent or other person who has permanent or temporary care and custody of a child, if provisions are made for the protection of the identity of the reporter or any other person whose life or safety is likely to be endangered by disclosing the information.[4]

Runge is the parent of the children he was charged with abusing and, therefore, places particular reliance on paragraph (6). Paragraph (4) would seem equally applicable if Runge's arguments are sound, because he is the person charged with child abuse.[5] His position is that in the last

---

3. Title 5, subtitle 7 deals with neglected children and requires certain reports and notifications under certain circumstances.

4. Other paragraphs of subsection (b) deal with disclosure to personnel of local or State departments of social services, law enforcement officers, and certain others who investigate or provide services in a child abuse case (paragraph (2)); certain local or State officials (paragraph (3)); and certain licensed practitioners (paragraph (5)).

5. It could be questioned whether Runge, who was in jail pending trial, was "responsible for the child's welfare (paragraph (4)) or had "custody of a child" (paragraph (6)). The record is not clear on this, but we shall assume, without deciding, that Runge met either or both of these conditions.

sentence of subsection (b), the word "may" should be read as "shall," thus making the sentence read: "Information contained in reports or records concerning child abuse *shall* be disclosed only ..." [emphasis supplied]. *See Resetar v. State Bd. of Education,* 284 Md. 537, 547–550, 399 A.2d 225, 230–232, *cert. denied,* 444 U.S. 838, 100 S.Ct. 74, 62 L.Ed.2d 49 (1979) (context of statute sometimes requires "may" to be interpreted as mandatory). This has to be the proper construction, he asserts, because to have the language declare that "records may be disclosed only: (1) under a court order ..." makes no sense. If there is a court order for the disclosure of records, the record *must* be disclosed. The Court of Special Appeals agreed. *Runge,* 78 Md.App. at 34, 552 A.2d at 566. Once that "may" becomes "shall," the statute commands that records "shall" be disclosed to either the child abuser identified in paragraph (4) or to the parent identified in paragraph (6).

The problem with Runge's analysis is that he fails to read the last sentence of subsection (b) in the context of the rest of § 6, or in the context of the section's legislative history.

We turn first to legislative history, for this helps to provide us with the context within which the statute must be read. *NCR Corp. v. Comptroller,* 313 Md. 118, 145–146, 544 A.2d 764, 777 (1988); *see also Wilde v. Swanson,* 314 Md. 80, 92, 548 A.2d 837, 843 (1988).

What is now § 6 of Article 88A was first enacted by Chapter 238, Acts of 1941. It was then § 3A and consisted, in substance, of present subsections (a), (c), and (e) of § 6. This seminal statute was designed to assure the confidentiality of certain "welfare" records by making their disclosure a crime unless the disclosure happened to be made under certain circumstances or to certain designated entities. It contained no hint of authority for compulsory disclosure of the protected information.

Over the years, § 3A became § 6. Chapter 702, Acts of 1968. Present subsection (b), or at least its principal begin-

nings, did not appear until 1983. Chapter 492, Acts of 1983. What became Chapter 492 originated as HB 1395.

The Senate Judicial Proceedings Committee Report and other documents in the bill file indicate that the major purpose of HB 1395 was to bring Maryland law into accord with federal law. Montgomery County reported that enactment of HB 1395 would make Maryland eligible for federal funding of over $125,000 which was unavailable to the State because of its existing legislation. Letter from Eleanor E. Wormwood to the Chairman of the Judiciary Committee (17 March 1983). Delegate Hixson, the bill's sponsor, explained that the legislation was designed to enhance protection for abused children and also to bring Maryland law into conformity with federal law, so that Maryland could receive a $125,000 federal grant for expansion of child protection programs. The Court of Special Appeals acknowledged this purpose in *Freed v. Worcester County*, 69 Md.App. 447, 453–454, 518 A.2d 159, 162, *cert. denied*, 309 Md. 47, 522 A.2d 392 (1986), *appeal dismissed*, 484 U.S. 804, 108 S.Ct. 49, 98 L.Ed.2d 14 (1987). Neither the statute nor its bill file give any indication that it was intended to grant disclosure rights to certain criminal defendants.

The relevant federal statute is the Federal Child Abuse Prevention and Treatment Act which requires that in order to qualify for a grant, a State must, among other things, "provide for methods to preserve the confidentiality of all records in order to protect the rights of the child, his parents or guardians." 42 U.S.C. § 5106a(b)(4).[6] That statute is implemented by regulations. These declare that a "State must provide by statute that all records concerning reports and reports of child abuse and neglect are confidential and that their unauthorized disclosure is a criminal offense." 45 C.F.R. § 1340.14(i)(1). But they also provide that a State, if it "chooses to, [ ] may authorize by statute disclosure to any or all of the following persons and agen-

6. In 1983, the quoted provision was codified at 42 U.S.C. § 5103(b)(2)(E).

cies, under limitations and procedures the State determines." 45 C.F.R. § 1340.14(i)(2). Among the listed persons and agencies are a court (paragraph 2(ii)), and the "person about whom a report has been made" (paragraph 2 (viii)).

These items are obviously reflected in § 6(b)(1) and (4). It is equally obvious that the goal of § 6 was, in a larger societal sense, to provide for confidentiality, and in a narrower sense, to conform to the mandates of federal law. Neither objective even remotely suggests that § 6(b) should be read as an entitlement to mandatory discovery in a criminal case. As the Court of Special Appeals has perceived, "[t]he statute was never intended to be a vehicle to permit the willy-nilly disclosure of the very records the Legislature sought to keep confidential." *Freed*, 69 Md. App. at 454, 518 A.2d at 162.

■ When we look at § 6(b) from the perspective of its legislative history and when we view it as an integral part of a criminal statute designed to prevent the disclosure of records, its language becomes clear. When the statute tells us that "[i]nformation contained in reports or records concerning child abuse or neglect may be disclosed only" under defined circumstances or to designated entities, it is telling us that custodians have authority to release the information within the statutory framework[7] and that if it is so released, the custodians will not be subject to prosecution under § 6(b). Thus, if a custodian discloses pursuant to court order, the custodian is immune. And if the custodian exercises discretion to disclose to the accused abuser responsible for the child, the custodian cannot be liable under the statute (providing any applicable regulations are adhered to and informants and others are safeguarded).

Contrary to Runge's contention, the subsection is not a mandatory discovery provision that directs disclosure of

---

7. Section 6(d) authorizes regulations "governing access to and use of confidential information which is in the possession of the [Social Services] Administration or local departments of social services."

confidential social services records to child abusers or to the parents of abused children. Any basis for requiring discovery of records protected by § 6(b) must be found outside that subsection. The trial court was correct in rejecting Runge's § 6(b) argument. The Court of Special Appeals erred in accepting it.

## III.

As an alternative ground for reversing the trial court, the Court of Special Appeals relied on the impropriety of certain remarks made by the trial judge. We agree that the remarks were improper, but we disagree that under the circumstances the judge was required to declare a mistrial. We summarize the circumstances.

Runge's trial began on the morning of 18 January 1988 and ended late on the afternoon of 21 January when the jury brought in its guilty verdicts. Although Runge had been represented by counsel during various preliminary proceedings, he represented himself at the outset of the trial.[8] In his *pro se* capacity, Runge made an opening statement to the jury. After this and after three prosecution witnesses had testified, it was brought to the judge's attention that the court reporter had not taken down part of Runge's opening statement. The judge gave Runge the option of making a new opening statement, of supplementing the original statement, or simply of dictating the unrecorded portions to the court reporter. No action on that offer was taken at that time.

By 20 January, the State had rested, and counsel for Runge was back in the picture. Defense counsel reminded the judge of his promise to allow Runge the option of a second opening statement. Despite prosecution objections, the judge kept his word. Counsel proceeded to address the

---

[8]. Runge, of course, had a federal constitutional right to represent himself. *Faretta v. California,* 422 U.S. 806, 807, 95 S.Ct. 2525, 2527, 45 L.Ed.2d 562, 566 (1975); *Fowlkes v. State,* 311 Md. 586, 589, 536 A.2d 1149, 1151 (1988).

jury, initially undertaking to discuss the role of "the Defense Counsel, the State's Attorney, the Judge and, of course, yourselves." He explained

[o]ne thing we've got here, as in almost every state I know of in the United States, is the adversary system where the State is representing the interests of the community, and they come here and present to you certain evidence that they think that from the evidence they are going to be able to prove certain charges that they allege against the Defendant, which in this case are three counts of child abuse, not physical abuse, but sexual child abuse against the three children whom you've already heard testify. So their job, the State's job, is to put on evidence that would favor a conviction.

To this statement, especially its ultimate sentence, the prosecutor objected. The judge agreed with the State:

The State has an obligation to be fair and impartial and put on evidence on which they submit to the jury, and the jury determines whether a person is guilty or not.

Defense counsel insisted that "the State is an advocate." When the judge directed him to "continue to make your speech," counsel asked to approach the bench. The judicial (if not judicious) response was: "So what is new? Let's get up here."

At the bench (and now out of the presence of the jury), some harsh words were exchanged between counsel and court. Runge's lawyer moved for a mistrial because "the Court has indicated the position is in favor of the State and against the Defendant." The motion was denied, it being the judge's view that the "statement you [defense counsel] said is entirely incorrect, and [the prosecutor] was right in objecting to it."

The Court of Special Appeals thought that the judge's remark that "the State has an obligation to be fair and impartial" had "the effect of enhancing the position of the State and its role in the trial." *Runge*, 78 Md.App. at 38, 552 A.2d at 568. This, coupled with the trial judge's "sar-

castic ... 'so what is new?' " remark as he invited counsel to the bench, denied Runge a fair trial, in the view of the appellate court. *Id.,* 552 A.2d at 568.

Of course, the trial judge should not have suggested that the prosecutor's role at trial was not that of an advocate. It is true that a State's Attorney should not prosecute a charge he or she knows is not supported by good cause. Rule 3.8(a), Rules of Professional Conduct, Md.Rule 1230 (1989); ABA Standards for Criminal Justice § 3–3.9 (2d ed. & Supp.1986). It is also true that a prosecutor's decision whether or not to prosecute should be impartial. *Sinclair v. State,* 278 Md. 243, 260, 363 A.2d 468, 478 (1976); *see Brack v. Wells,* 184 Md. 86, 90, 40 A.2d 319, 321 (1944). Moreover, a prosecutor does have an obligation to disclose to the defense, in a timely manner, all evidence or information which the prosecutor possesses "that tends to negate the guilt of the accused or mitigates the offense." Rule 3.8(d), Rules of Professional Conduct, Md.Rule 1230 (1989).

But while the State should "refrain from improper methods calculated to produce a wrongful conviction," it should also "use every legitimate means to bring about a just one." *Berger v. United States,* 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314, 1321 (1935); *Sinclair,* 278 Md. at 260, 363 A.2d at 478 (asserting "that when a State's Attorney determines that the public interest requires prosecution, it is his duty to zealously seek to convict those guilty of crime"). In the trial of a criminal case, the State is an advocate, just as defense counsel here asserted. ABA Standards for Criminal Justice § 3–1.1 (2d ed. 1979 & Supp.1986) (prosecutor is administrator of justice and advocate). The trial judge, therefore, erred in his admonition to defense counsel and was incorrect in his statement of a prosecutor's role. Moreover, his "[s]o what is new?" remark was inappropriate.

The Court of Special Appeals's reversal on this ground rested largely on *Spencer v. State,* 76 Md.App. 71, 543 A.2d 851 (1988). *Runge,* 78 Md.App. at 37–38, 552 A.2d at 568. In *Spencer* the trial judge, in front of the jury, accused defense counsel of deliberately sandbagging the court and

the prosecution. He also refused to allow counsel to approach the bench to explain her tactics. *Spencer,* 76 Md. App. at 76–77, 543 A.2d at 853–854. The Court of Special Appeals concluded that "under the totality of the circumstances, the trial judge's remarks to defense counsel in front of the jury denied [Spencer] a fair trial" because those remarks "impugned [defense counsel's] integrity; they indicated that she was dishonest with the court and the jury." *Id.* at 78, 543 A.2d at 854–855.

■ What happened here was much less egregious. We must recall that Runge's trial was a lengthy and complex one. It was characterized by a great deal of what the court more than once described as "petty objections" or "petty fighting" and punctuated by frequent admonitions to both lawyers. There were numerous bench conferences, and rulings went both for and against the defense. As the judge commented at one point, "[b]oth of you are playing hardball." In short, in the judge's words, it was "a very difficult trial because everybody is fighting and [counsel are] fighting the whole time." The tension was not eased by Runge's efforts at self-representation.[9]

In this slash-and-parry atmosphere, it is doubtful that the judge's comments, found so significant by the Court of Special Appeals, really made much of an impression on the jury. They were made on the third day of a four-day trial. They were made while Runge's counsel was enjoying the benefit of a second opening statement. And after the incident that provoked defense counsel to move for a mistrial, he was allowed to continue with his statement and to make the very point he was seeking to emphasize. After the judicial comments now under review, the defense attorney resumed:

Let me continue. The Assistant[ ] State's Attorney ... is an advocate for the State's position. It is his job to present evidence. And it is his job to advocate to you

---

9. At one point, for example, Runge charged "I think the Court is acting like a preposterous ass."

through the evidence and then, of course, later through his arguments the State's position in the case.

The lawyer went on to discuss the role of defense counsel, judge, and jury. The end result was to make it clear that both prosecutor and defense counsel were advocates for their opposing viewpoints.

A day later the court instructed the jury, carefully explaining the presumption of innocence and the State's burden of proof. It also made clear that evidence before the jury, not the words of counsel, was to be the basis for the verdicts. And it warned that

> [i]f the Court made certain statements or advised the attorneys or questioned certain witnesses or I sustained certain objections, do not take that as the Court favors one side over the other. The Court does not.

In the totality of circumstances here, we do not believe that the judge's partially erroneous description of the prosecutorial function, or his somewhat intemperate invitation to the bench, put the role of defense counsel or defense counsel himself in such a bad and inaccurate light as to warrant the granting of a mistrial. Accordingly, the Court of Special Appeals erred when it reversed because of the judge's failure to do so.

## IV.

For the reasons we have given, we must reverse the judgment of the Court of Special Appeals. That does not necessarily mean, however, that Runge's convictions and sentences shall stand. In the intermediate appellate court, Runge raised a number of issues. Those addressed by that court, except for the two with which we have dealt here, were decided against him. Those adverse decisions remain undisturbed. Runge filed no cross-petition for certiorari. But one issue—a challenge to the jury array—was not addressed by the Court of Special Appeals. *Runge*, 78 Md.App. at 27, 552 A.2d at 562. Our disposition of the case requires that we remand it to the Court of Special Appeals

for consideration of this issue. If the appellate court finds error there, Runge is entitled to a new trial. If not, the judgment of the Circuit Court for Cecil County must be affirmed.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS IN THIS COURT TO BE PAID BY RESPONDENT. COSTS IN THE COURT OF SPECIAL APPEALS TO ABIDE THE RESULT.