589 A.2d 569

**CONSOLIDATED RAIL CORPORATION**

v.

**STATE of Maryland.**

No. 1041, Sept. Term, 1990.

Court of Special Appeals of Maryland.

May 9, 1991.

Frederick L. Kobb (James W. Constable and Wright, Constable & Skeen, on brief), Baltimore, for appellant.

Ralph S. Tyler, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Jean Baron, Asst. Atty. Gen. and Areta L. Kupchyk, Staff Atty., on brief), Baltimore, for appellee.

Argued before GARRITY, ALPERT and ROBERT M. BELL, JJ.

ROBERT M. BELL, Judge.

Consolidated Rail Corporation, appellant, appeals from the judgment of the Circuit Court for Prince George's County granting summary judgment in favor of the State of Maryland, appellee, (hereinafter "the State"), for the costs incurred by the State in connection with appellant's performance of work at a railroad grade crossing. It presents two questions for our resolution:

1. Do the provisions of § 8–640 and § 8–642 of the Transportation Article of the Annotated Code of Mary-

land apply to the case at bar thus limiting the State's recovery to 25% of the cost of its detour and repair work? 2. Does the State's claim, which sounds in negligence, entitle it to recover the costs of its detour work which was undertaken prior to Conrail's alleged negligent action?

We resolve the first issue against appellant, but hold in its favor as to the second. Therefore, we will affirm in part and reverse in part.

This appeal had its genesis when appellant performed work on its tracks and the adjacent roadway at a railroad grade crossing located on U.S. Route 301, south of Maryland Route 4, in Upper Marlboro, Maryland. Although the work was done with its knowledge, the State contended that it was negligently and improperly done, thus creating an unsafe condition for motorists [1] and necessitating it, the State, to perform emergency repairs. When appellant did not respond to the State's demand that it be reimbursed for the expenses it incurred in correcting appellant's work, the State filed this action in the Circuit Court for Prince George's County. That court granted the State's motion for summary judgment as to liability and determined, from the undisputed facts, that the total possible damages amounted to $31,082.67. It denied the State's motion for summary judgment as to damages, however. As to that, the court "ordered that this matter be scheduled on the basis of possible apportionment of payment...." Following discovery and a further hearing, the court granted the State's motion for summary judgment in the full amount of the damages previously determined. It ruled "that the [apportionment] statute doesn't apply, so, therefore, there is

---

1. According to the State, appellant raised the grade of the tracks but did not properly tie in the new grade and the adjacent roadway, a fact appellant does not dispute. Moreover, the State maintained that prior to appellant performing the work, the railroad grade crossing did not require repair; the only reason the work was undertaken by appellant was to render the tracks capable of supporting higher speed Conrail trains.

no apportionment." It is from this aspect of the judgment, *i.e.*, that the apportionment statute does not apply, that appellant has appealed.

### 1.

Appellant first argues that, pursuant to §§ 8–640(c) [2] and 8–642 [3] of the Maryland Transportation Code Ann., it is obligated to pay, and the State may only recover, 25 percent of the cost of the repair work it performed at the grade crossing. This result is mandated, it says, by the clear and unambiguous language of the statutes, the application of which would not result in an illogical or unfair result.

Not surprisingly, the State takes the opposite position. It argues that "[t]he intent of the apportionment statute . . . is to require railroads to pay only 25% of project costs, if, but only if, the State is either the cause or beneficiary of the work." Thus, it maintains that, because it is required, pursuant to subtitle 6 of Title 8 of the Transportation Code Ann., and, in particular, § 8–601, to "construct, reconstruct, and repair State highways as necessary and [to] maintain them in good condition," the legislature authorized the State to reimburse the railroad for 75 percent of the cost of

---

**2.** That section provides:
    (c) *Work to be done by railroad.—*
    (1) The [State Highway] Administration may require the railroad to do any of the work needed under this section, on the terms and conditions that the Administration specifies.
    (2) If the railroad fails to do any work required of it under this section, the Administration may perform the work itself and collect the railroad's share of the cost from the railroad.

**3.** That section, which pertains to the allocation of the cost of the work, provides:
    (a) *Between railroads and Administration.—*As to the costs of any railroad grade crossing or railroad separation project or mainte-nance:
        (1) 25 percent of these costs shall be paid by the railroads that benefit from the crossing or separation; and
        (2) 75 percent of these costs shall be paid by the Administration.
    (b) *Among railroads.—*If two or more railroads benefit from the crossing or separation, the railroads' 25 percent share shall be apportioned among them as determined by the Administration.

any work performed by the railroad which directly or incidentally carries out the State's mandate, that is, that it helps it to meet its statutory responsibilities. Like appellant, the State relies upon statutory construction to support the position it espouses.

We approach the interpretation of a statute with the goal of determining its legislative purpose, "the general aim or policy, 'the ends to be accomplished ...' by the statute construed." *Norris v. United Cerebral Palsy of Central, Maryland, et al.*, 86 Md.App. 508, 516, 587 A.2d 557 (1991), quoting *Morris v. Prince George's County*, 319 Md. 597, 603–04, 573 A.2d 1346 (1990). *See also Department of Environment v. Showell*, 316 Md. 259, 270, 558 A.2d 391 (1989); *ANA Towing, Inc. v. Prince George's County*, 314 Md. 711, 715, 552 A.2d 1295 (1989). Since "what the legislature has written in an effort to achieve a goal is a natural ingredient of analysis to determine that goal," *Kaczorowski v. City of Baltimore*, 309 Md. 505, 513, 525 A.2d 628 (1987), the language of the statute is the logical starting place for the process. *Brodsky v. Brodsky*, 319 Md. 92, 98, 570 A.2d 1235 (1990). Nevertheless, the "meaning of the plainest language" is affected by its context, *Matter of Diane M.*, 317 Md. 652, 658, 566 A.2d 108 (1989), and, therefore, even though it may not be *necessary* to go beyond a review of the statutory language when that language sufficiently expresses the legislative purpose, *Davis v. State*, 319 Md. 56, 61, 570 A.2d 855 (1990), the court is always free to consider the statutory language in the context in which it appears. *State v. Runge*, 317 Md. 613, 618, 566 A.2d 88 (1989); *Warfield v. State*, 315 Md. 474, 499–500, 554 A.2d 1238 (1989). Moreover, a court should neither resort to subtle or forced interpretations for the purpose of extending or limiting the operation of the statute, *Mayor and City Council of Baltimore v. Hackley*, 300 Md. 277, 283, 477 A.2d 1174 (1984); *Schweitzer v. Brewer*, 280 Md. 430, 438, 374 A.2d 347 (1977); *Board of Trustees v. Kielczewski*, 77 Md.App. 581, 587–88, 551 A.2d

485, *cert. denied,* 315 Md. 692, 556 A.2d 673 (1989); *Depart-ment of Health v. Congoleum Corp.,* 51 Md.App. 257, 264, 443 A.2d 130 (1982), nor adopt a construction leading to results which are unreasonable, illogical, and inconsistent with common sense. *State v. Bricker,* 321 Md. 86, 92, 581 A.2d 9 (1990); *Kaczorowski,* 309 Md. at 513, 525 A.2d 628 quoting *Tucker v. Fireman's Fund Insurance Company,* 308 Md. 69, 75, 517 A.2d 730 (1986). Finally, where the statute is a part of a statutory scheme, it should be inter-preted so as to harmonize the various statutory provisions. *See Taxiera v. Malkus,* 320 Md. 471, 481, 578 A.2d 761 (1990); *Harford County v. University,* 318 Md. 525, 529, 569 A.2d 649 (1990).

The applicable provisions to be interpreted are found within Title 8. That title governs the State's highways and the various subtitles within the title address different as-pects of that subject: subtitle 2 concerns the State Highway Administration; subtitle 3, acquisition and disposition of property for highway purposes; subtitle 4 involves highway users revenues; subtitle 5 addresses the federal highway programs; subtitle 6, construction and maintenance of the State's highways; subtitle 7 regulates outdoor advertising; and subtitle 8 involves junk and scrap yards. Within subti-tle 6 are §§ 8–640 and 8–642, both of which relate to the allocation of responsibility for work performed, or required to be performed, at railroad crossings. Section 8–642, in particular, specifies how the costs of that work are to be allocated. The meaning of §§ 8–640 and 8–642 must be ascertained by reference to the entire statutory scheme, *i.e.,* by reference to the relevant provisions of Title 8.

Section 8–642 addresses the allocation of the costs "of any railroad grade crossing or railroad grade separation project or maintenance." Three of the terms used in that section are defined in § 8–101 [4] and two of them have

---

**4.** The term "railroad grade crossing" is not defined.

relevance to the resolution of the issue *sub judice*.[5] Section 8–101(*l* ) defines "project" as "the construction, reconstruction, or relocation of one or more sections or parts of the State highway system." "Maintenance" is defined as "the upkeep and repair by which a highway ... is kept in an ordinarily efficient operating condition," § 8–101(j)(1), but "does not include construction, reconstruction, or relocation." § 8–101(j)(2). Thus, in context, when § 8–642(a) refers to "project" or "maintenance," it is necessarily referring to a project of, or maintenance by, the State highway system, rather than of, or by, a railroad or other private entity. Read in light of the entire statutory scheme, then, § 8–642 has reference to work within the statutory responsibility of the State Highway Administration, work initiated by the State and, if not initiated by the State, work that inures to the benefit of the State, in the sense that, when complete, it will have fulfilled the State's obligations as to highway construction and/or maintenance. So read, it is logical that the State should be required to pay the bulk of the cost of construction or maintenance. On the other hand, when the work is neither initiated by the State, nor fulfills the State's obligation to construct and maintain its highways, logic would not dictate that the State should shoulder such an obligation.

In the case *sub judice*, it is undisputed that, although it was aware that appellant intended to perform work on its tracks and the railroad bed at the railroad grade crossing in issue, the State did not initiate the grade crossing work. On the contrary, the record reflects that the work was initiated by appellant and, because the record further reflects that when it initiated the work, the railroad grade crossing was not in need of repair, it follows that it was done for appellant's benefit, and not the benefit of the State. Moreover, the record also reflects that, having initi-

---

5. The term, "railroad grade separation" is also a defined term. It means "any overpass or underpass that eliminates a railroad grade crossing." Section 8–101(m)(1).

ated the work, appellant performed it improperly and negligently, necessitating that additional work be done to render the railroad grade crossing safe once again. We hold that under these circumstances, that the provisions of § 8-642(a) simply do not apply; the work originally done by appellant was not a project of the State Highway Administration, nor was its maintenance required to keep the railroad grade crossing "in an ordinarily efficient operating condition." The costs incurred by the State as a result of the negligent performance of the railroad grade crossing work is, therefore, attributable solely to appellant,[6] which must bear the entire burden.

Appellant's argument that § 8-640 is relevant to the resolution of this issue is, we believe, without merit. Subsection (a) does place the responsibility on a railroad to "[k]eep its roadbed and the highway in proper repair so as to provide absolutely safe and easy approach to and crossing of the tracks." Enforcement of compliance with this section is the responsibility of the State Highway Administration, which, if the railroad does not do the work when required by it, may perform the work. In that event, the railroad remains obligated for its share of the cost of the work. § 8-640(c). This section only applies, therefore, when it is the State that initiates the requirement that the railroad perform the work. In this case, as we have seen, it was appellant, not the State, that chose to initiate the work and that work was not necessary to keep the roadbed and highway in proper repair. Accordingly, § 8-640 is inapposite.

---

6. It is significant that no issue is presented as to the propriety of the entry of summary judgment on liability and that appellant does not contend that there are disputed issues of fact. Therefore, we may not, under the guise of statutory interpretation, decide factual issues concerning whether the work performed by appellant initially fit within the definition of "project" or "maintenance." It may be that summary judgment should not have been granted in this case; the effect of the State's acquiescence when appellant informed it that it intended to perform work on the roadbed may involve disputed facts which should not have been resolved on summary judgment. That issue is not before us, however, and we do not further address it.

The bottom line of appellant's position is that, whenever the State is caused to perform any work, whether because of a railroad's negligent performance or pursuant to a project initiated by the State, 75 percent of the cost of that work must be borne by the State. As it sees it, the State does not lose anything even when a railroad performs maintenance work negligently since it would have to pay the bulk of the cost in any event.

If this argument were accepted, it would lead to an illogical and unreasonable result. Under it, a railroad could initiate unnecessary repairs, *i.e.*, those not necessary to the "safe and easy approach to a crossing of tracks," but simply and, in fact, solely for its convenience and benefit, and the State would nevertheless be responsible for the bulk of the costs. This must follow if appellant's position is to have any logic at all, for if the initial work is not subject to reimbursement under the allocation statute, then the work required to correct the initial work cannot be subject to allocation either. Thus, appellant argues that since

> [t]he State's work involved repairs to correct the road-work completed by Conrail at the crossing [and s]uch repair work is covered by Section 8–642 insofar as it uses the term 'maintenance', which is defined in § 8–101(j)(1) of the Transportation Article as '... the upkeep and repair by which a highway ... is kept in an ordinarily efficient operating condition.' While the State's work may have been done on an emergency basis, it nevertheless involved nothing more than repairs.

And, it continues, because the work was done at a railroad grade crossing, the allocation statute applies. Indeed, appellant goes even further to argue that "[t]he logic of applying the allocation provisions lies in the fact that the railroad's share of the cost of the State's work at a grade crossing should be the same whether the State was required to perform the work because the railroad did not perform at all or because the railroad performed in an unworkmanlike manner."

█ We reject that logic. We hold that, where a railroad negligently performs work, undertaken on its own initiative, and, so far as the record reflects, unnecessary for maintenance purposes, the cost of correcting the railroad's improperly performed work is not a cost to which the allocation statute applies. To hold otherwise would be to reach an illogical and unreasonable result and, indeed, one which is inconsistent with common sense. *Bricker*, 321 Md. at 92, 581 A.2d 9.

### 2.

█ Appellant's second argument is that it is not liable for the cost of the detour provided by the State. It contends that, since the State's complaint sounds in negligence and the State incurred the cost of providing a detour before it performed, albeit, negligently, the railroad grade crossing work, the State is not entitled to recover those costs.

In response, the State asserts that its "[a]mended Complaint does not sound solely in negligence, but sets out in a separately numbered paragraph, in accordance with Md. Rule 2–303 [7], the circumstances of the State's claim to recover the cost of the Conrail-caused detour work...." Furthermore, it says that "[a]lthough a complaint must state a cause of action with reasonable clarity, a pleading

---

**7.** *Md.Rule 2–303. FORM OF PLEADINGS*
    (a) *Paragraphs, Counts, and Defenses.*—All averments of claim or defense shall be made in numbered paragraphs, the contents of each of which shall be limited as far as practicable to a statement of a single set of circumstances; and a paragraph may be referred to by number in all succeeding pleadings. Each cause of action shall be set forth in a separately numbered count. Each separate defense shall be set forth in a separately numbered defense.
    (b) *Contents.*—Each averment of a pleading shall be simple, concise, and direct. No technical forms of pleadings are required. A pleading shall contain only such statements of fact as may be necessary to show the pleader's entitlement to relief or ground of defense. It shall not include argument, unnecessary recitals of law, evidence, or documents, or any immaterial, impertinent, or scandalous matter.

need not contain every circumstance which may prove the general charge."

Contrary to the State's argument, the amended complaint does not, consistent with Md.Rule 2–303, set out the circumstances underlying, and supportive of, the State's claim to recover the cost of the detour. The State's first complaint, consisting of seven paragraphs, was filed on September 28, 1988. Its first paragraph established that the Central Collection Unit is the statutory agent of the State Highway Administration. Paragraphs 2–4 concerned appellant's work at the railroad grade crossing, alleging that it was done in an unworkmanlike manner and in violation of the State Highway Administration's specifications. In Paragraphs 5–7, the State averred that appellant's negligence created a hazardous condition for motorists, thus requiring emergency repairs, which it performed, but for which appellant failed or refused to reimburse it. In short, while the cost of providing the detour was included in the amount of the damages sought, the State did not allege the basis for its recovery.

The State filed an amended complaint. In it was included a paragraph stating that: "[d]uring the entire period of the Consolidated Rail Corporation's repair ... the State Highway Administration installed and maintained a detour to divert the flow of traffic, at a cost of Seven Thousand Two Hundred Forty Eight Dollars and Seventy Cents...." Like the initial complaint, the amended complaint failed to allege any reason why the State was entitled to be reimbursed for the cost of the detour. Moreover, it is not disputed that the detour cost was not incurred as result of appellant's negligent performance.

The record indicates that the State corresponded with appellant, informing it of its responsibility for the cost of the detour. That correspondence is the only basis, reflected in the record for the State's entitlement to recover. It is well established that a complaint must contain sufficient "statements of fact as may be necessary to show the pleader's entitlement to relief." Maryland Rule 2–303(b).

Furthermore, "[i]t is not enough for a plaintiff merely to allege that they exist; he must set forth facts that, if true, would suffice to demonstrate that they exist." *Foor v. Juvenile Services,* 78 Md.App. 151, 175, 552 A.2d 947, *cert. denied,* 316 Md. 364, 558 A.2d 1206 (1989). In the case *sub judice,* no facts showing the State's entitlement to be reimbursed for providing a detour while appellant performed work on its roadbed have been alleged. Since the State failed to allege such facts, and, indeed, concedes as much, it may not recover the cost of the detour in this action.

JUDGMENT FOR COST OF REPAIR WORK AFFIRMED; JUDGMENT FOR COST OF THE DETOUR REVERSED.

COSTS TO BE PAID ONE–HALF BY APPELLANT AND ONE–HALF BY THE STATE.