612 A.2d 880

**BALTIMORE CITY DEPARTMENT OF SOCIAL SERVICES**

v.

**James STEIN et al.**

No. 109, Sept. Term, 1991.

Court of Appeals of Maryland.

Sept. 18, 1992.

**2**

Evelyn O. Cannon, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Shelly E. Mintz, Asst. Atty. Gen., on brief), Baltimore, for appellant.

Paul J. Weber (Rollins, Smalkin, Richards & Mackie, on brief), Baltimore, for appellees.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI, and ROBERT M. BELL, JJ.

ROBERT M. BELL, Judge.

There are two issues presented in this case: (1) the appealability of an order of the Circuit Court for Baltimore City requiring the Baltimore City Department of Social Services (BCDSS), the appellant, to disclose to James Stein, one of the defendants below [1] and the appellee herein, any records it may have on Stephen Ray, the minor plaintiff below, and Annette Hunter and Mickey Ray, his parents, hereinafter, collectively "the plaintiffs," and (2) the correctness of that ruling. The circuit court's order prompted the appellant to appeal to the Court of Special Appeals. We issued the writ of certiorari prior to argument in that court to consider the important issues raised. We shall reverse and remand for further proceedings.

## I.

Annette Hunter and Mickey Ray, for themselves, and on behalf of Stephen Ray, their child, sued the appellee, and others, for physical, mental, and emotional injury allegedly caused by lead paint poisoning Stephen suffered, as a result of the appellee's negligence, while residing in a home owned and managed by the appellee Stein. The plaintiffs did not name the appellant as a defendant, nor did appellee join it as a party.

Having filed answers to the plaintiffs' amended complaint [2], the appellee engaged in discovery. He filed and served a Notice To Take Deposition *duces tecum* on the appellant. That notice set a date for taking the deposition of the appellant's custodian of records, in this case, its Director, who was requested to produce

---

1. The other defendants were Consumer Management Corp., and Cleoniki Hanson. Only Stein filed a brief in this Court. Thus, we refer only to him when discussing the proceedings below.

2. Appellee Stein's answer purported to be to "counts 1 and 2 of plaintiffs' amended complaint," while defendant Hanson's answer was not restricted in any fashion.

"[t]he entire file regarding Annette Hunter ... Mickey Ray ... and their child, Steven Ray ... to include all payments made by Social Services to them on their behalf or on behalf of all their dependents (welfare payments, medical assistance payments, W/C payments, etc.) and all records of the Department of Social Services, the Department of Protective Services and/or Division of Daycare."

Resisting the subpoena issued pursuant to the notice, the appellant filed a Motion For Protective Order.[3] It offered several reasons for objection: (1) relying on Maryland Code (1957, 1991 Repl.Vol.) Article 88A, § 6,[4] that the records are

---

3. By their Motion In Support Of The Baltimore City Department Of Social Services' Motion For Protective Order, filed May 17, 1991, the plaintiffs "support[ed] the reasoning, analysis and contentions outlined in the motion filed by DSS." In addition, however, they reserved their right to raise any privilege they might have against the disclosure of any of the information sought by the respondents. Moreover, the plaintiffs asserted that "they did not receive any assistance from DSS between the years 1984 and 1990. Steven Ray, the infant plaintiff who alleges lead paint poisoning, was born in 1986. The family moved out of the premises at issue in 1990. Thus, plaintiffs received no assistance from DSS during any time period pertinent to the instant case." Finally, the plaintiffs challenged the sufficiency of Stein's proffer that the records are relevant, insisting that to permit discovery in this case "would be a gross violation of the plaintiffs' privacy and would serve no useful purpose."

4. In pertinent part, that section provides:
(a) *In General.*—Except in accordance with a court order or to an authorized officer or employee of the State, or the United States, or a fiduciary institution having a right thereto in an official capacity, and as necessary to discharge responsibilities to administer public assistance, medical assistance, or social services programs, it shall be unlawful for any person or persons to divulge or make known in any manner any information concerning any applicant for or recipient of social services, child welfare services, cash assistance, food stamps, or medical assistance, directly or indirectly derived from the records, papers, files, investigations or communications of the State, county or city, or subdivisions or agencies thereof, or acquired in the course of the performance of official duties.
(b) *Child Abuse or neglect.*—Except as otherwise provided in Title 5, Subtitle 7 of the Family Law Article, all records and reports concerning child abuse or neglect are confidential, and their unauthorized disclosure is a criminal offense subject to the penalty set out in subsection (e) of this section. Information contained in reports or records concerning child abuse or neglect may be disclosed only:

confidential and may be released only pursuant to court order; (2) that the records are protected by executive or governmental immunity; (3) that executive or governmental privilege exempts the records from disclosure; and (4) that the social worker, and/or psychologist/psychiatrist-patient, privilege "may apply to all or portions of the requested records."

The appellee moved to compel. In his motion, he acknowledged that "the Department is not unjustified in interposing the present objection, and in requiring a court order to produce the requested materials." He argued, however, that what he sought

> may be and most likely, will be directly pertinent and vital to the completion of meaningful discovery in this case. Quite clearly, should these records reveal instances of child abuse or neglect, or matters of psychological or psychiatric problems, all of the information would be directly relevant. Defendants must be permitted to have access to this information in order to have full opportunity for an adequate defense. This is all the more obvious since Plaintiff and/or her family or counsel would have access to much or all of the information contained in these records.

Also, the appellee did not entirely reject *in camera* inspection as an option; rather, he took the position that, while *in camera* inspection is not absolutely necessary, he would not object if the court were to find it appropriate. In addition, the appellee did not challenge the need to maintain confidentiality, by redacting identity information with respect to child abuse or neglect informants. Finally, the appellee rejected the appellant's argument that records relating to Social Services' intervention, other than through Child Protective Services, are irrelevant. He asserted, on the con-

---

(1) Under a court order;
 \* \* \* \* \* \*

Maryland Code (1974, 1991 Repl.Vol.) Title 5, Subtitle 7 of the Family Law Article pertains to Divorce. Subsection (e) provides for a penalty of a $500.00 fine or 90 days imprisonment, or both.

trary, that because it relates to the social environment, "information as to where the infant Plaintiff resides, who is charged with the responsibility of supervising the infant Plaintiff and commentary as to the adequacy and propriety of the care given to the infant Plaintiff", is crucial. The appellee concluded:

> Thus, an investigation into the social environment of the infant Plaintiff is crucial. The nature of the caregiving environment is clearly a relevant inquiry into the source and factors contributing to the alleged lead intoxication of the minor Plaintiff. Further, the records sought by the Defendants may clearly show evidence of causes contributing to the claimed injuries of the minor Plaintiff. The Plaintiff has put her mental, emotional and social status at issue by filing a lawsuit. The defense of this lawsuit would be severely hampered if the clearly relevant information contained in the records of the Department is categorically denied to the Defendants.

In neither the Notice For Deposition *duces tecum* nor the Motion To Compel did the appellee proffer precisely what evidence regarding the minor plaintiff and the cause of action it believed the appellant's files would reveal. He simply asserted that evidence that shows the social circumstances under which the minor plaintiff was raised was relevant.

Notwithstanding that both the appellant and the appellee requested a hearing,[5] the trial court decided the issue with-

---

5. Maryland Rule 2–311(f) provides:
> (f) *Hearing—other motions.*—A party desiring a hearing on a motion, other than a motion filed pursuant to Rule 2–532, 2–533, or 2–534, shall so request in the motion or response under the heading "Request for Hearing." Except when a rule expressly provides for a hearing, the court shall determine in each case whether a hearing will be held, but it may not render a decision that is dispositive of a claim or defense without a hearing if one was requested as provided in this section.

The propriety of granting the motion without holding a hearing has not been presented for review. Accordingly, we do not address it.

out one. It denied the appellant's motion for protective order and granted the appellee's motion to compel.

## II.

Anticipating an avenue of attack by the appellee, the appellant argues that the circuit court's discovery order requiring disclosure of any files it might have on the plaintiffs is appealable. Conceding that the order is not a "final judgment" within the meaning of Maryland Code (1974, 1989 Repl.Vol., 1991 Cumm.Supp.) § 12–301 of the Courts and Judicial Proc. Article, the appellant maintains that it is appealable under the "collateral order doctrine," a recognized exception to the "final judgment" rule.

While acknowledging that the order from which it has appealed is a discovery order, which normally is interlocutory and, consequently, nonappealable, *see Public Service Comm'n v. Patuxent Valley*, 300 Md. 200, 207, 477 A.2d 759, 763 (1984); *Sigma Repro. Health Center v. State*, 297 Md. 660, 675, 467 A.2d 483, 490 (1983), the appellant asserts that the requirements of the collateral order doctrine are all met in this case. Hence, it argues, the order is appealable. The court's order conclusively determined, *i.e.,* foreclosed its further challenge to the ruling, that the appellant must disclose to the appellee any records it may have on the plaintiffs.[6] The issue decided, *i.e.,* the propriety of disclosing Social Services' records in a civil case on the basis simply of a subpoena *duces tecum,* and without the necessity of a proffer, is an important one. While impacting on them, the issue presented is not dispositive of the merits of the underlying action and, indeed, is distinct from them. As to the final factor, whether the order will be reviewable on appeal from the final judgment resolving the merits, the

---

6. The appellant did not postpone noting its appeal until after it had been held in contempt, believing that "an agency of the State of Maryland should not be subjected to the indignity and ultimate sanction of a contempt order in order to protect its legitimate interest in maintaining confidentiality of Social Services' records from unnecessary and inappropriate disclosure."

appellant points out that, once disclosure is made pursuant to the court's order, the harm is done; the confidentiality of the information is lost immediately and forever; it cannot be recaptured, whatever the ruling on appeal may be.

The appellee agrees that the correct analysis is under the collateral order doctrine. Unlike the appellant, however, he denies that all of the doctrine's prerequisites have been met in this case. Specifically, relying on *Sigma Repro. Health Cen., supra,* 297 Md. at 670–71, 467 A.2d at 488, he argues that the records sought may contain facts material to the defense of the personal injury action and, thus, the collateral issue is intertwined with the merits of the case. The appellee also questions whether the order has the requisite finality since the appellant has not been held in contempt. Moreover, the appellee asserts that, in this case, the federal issue, *i.e.,* whether he had been accorded due process, has not yet been decided; hence, there has been no finality as was the case in *Pennsylvania v. Ritchie,* 480 U.S. 39, 47, 107 S.Ct. 989, 996, 94 L.Ed.2d 40, 51 (1987).

### B.

Maryland Code (1974, 1989 Repl.Vol.) § 12–301 of the Courts & Judicial Proceedings Article provides that "[A] party may appeal from a final judgment entered in a civil ... case", whether entered in the exercise of original, special, limited, or statutory authority, unless "expressly denied by law." Its purpose is to discourage the piecemeal appeal of issues generated at various stages of the litigation. *Cant v. Bartlett,* 292 Md. 611, 614, 440 A.2d 388, 389 (1982), *Stewart v. State,* 282 Md. 557, 561, 386 A.2d 1206, 1208 (1978); *Jolley v. State,* 282 Md. 353, 356, 384 A.2d 91, 93 (1978). *See also* Maryland Rule 2–602 which provides:

(a) *Generally.*—Except as provided in Section (b) of this Rule, an order or other form of decision, however designated, that adjudicates fewer than all of the claims in an action (whether raised by original claim, counter-claim, cross-claim, or third-party claim), or that adjudicates less

than an entire claim, or that adjudicates the rights and liabilities of fewer than all the parties to the action:

(1) is not a final judgment;

(2) does not terminate the action as to any of the claims or any of the parties; and

(3) is subject to revision at any time before the entry of a judgment that adjudicates all of the claims by and against all of the parties.

(b) *When allowed.*—If the court expressly determines in a written order that there is no just reason for delay, it may direct in the order the entry of a final judgment:

(1) as to one or more but fewer than all of the claims or parties; or

(2) pursuant to Rule 2–501(e)(3), for some but less than all of the amount requested in a claim seeking money relief only.

Section 12–101(f) defines "final judgment" as "a judgment ... or other action by a court ..., from which an appeal, application for leave to appeal, or petition for certiorari may be taken." This definition, because it does not specify the elements of finality, leaves to this court the ultimate determination of which judgments are final and, therefore, appealable under § 12–301. *Cant v. Bartlett,* 292 Md. at 614, 440 A.2d at 389; *Smith v. Taylor,* 285 Md. 143, 146, 400 A.2d 1130, 1133 (1979); *Peat, Marwick, Mitchell & Company v. Los Angeles Ram Football Company,* 284 Md. 86, 91, 394 A.2d 801, 804 (1978); *Patuxent Valley,* 300 Md. at 206, 477 A.2d at 762; *Sigma Repro. Health Center,* 297 Md. at 664–66, 467 A.2d at 484–86.[7]

We have interpreted "finality" for appeal purposes as involving settlement, determination, and conclusion of the rights of the parties. Thus, we have said that to be a "final

---

7. By preventing piecemeal appeals, the statute necessarily prevents the interruption of ongoing judicial proceedings, *Sigma Repro. Health Center v. State,* 297 Md. 660, 665, 467 A.2d at 485; *Peat & Co.,* 284 Md. at 91, 394 A.2d at 804, and, thus, promotes judicial economy. *Sigma Repro. Health Center,* 297 Md. at 665, 467 A.2d at 485.

judgment", the judgment "must be so far final as to determine and conclude the rights involved in the action, or to deny to the party seeking redress by the appeal the means of further prosecuting or defending his rights and interests in the subject matter of the proceeding." *In re Buckler Trusts*, 144 Md. 424, 427, 125 A. 177, 178 (1924). *See also Sigma Repro. Health Center*, 297 Md. at 665, 467 A.2d at 485; *Peat & Co.*, 284 Md. at 91, 394 A.2d at 804; *Boteler & Belt v. State*, 7 G. & J. 109, 112–13 (1835). In order for a judgment to be considered final and appealable in Maryland, "[t]he judgment must settle the rights of the parties, thereby concluding the cause of action." *Estep v. Georgetown Leather*, 320 Md. 277, 282, 577 A.2d 78, 80–81 (1990); *See also Wilde v. Swanson*, 314 Md. 80, 84, 548 A.2d 837, 839 (1988); *Houghton v. County Commissioners*, 305 Md. 407, 412, 504 A.2d 1145, 1148, on reconsideration, 307 Md. 216, 513 A.2d 291 (1986); *Highfield Water Company v. Washington County Sanitary District*, 295 Md. 410, 415, 456 A.2d 371, 373 (1983); *Schultz v. Pritts*, 291 Md. 1, 6, 432 A.2d 1319, 1322 (1981).

There are exceptions to the final judgment appealability rule. Section 12–303 permits a party to appeal certain interlocutory orders. In addition, we have "adopted the so-called 'collateral order doctrine,' which treats as final and appealable a limited class of orders which do not terminate litigation in the trial court." *Patuxent Valley*, 300 Md. at 206, 477 A.2d at 762. In addition to the cases cited in *Patuxent Valley, supra, see e.g. County Commissioners v. Schrodel*, 320 Md. 202, 209, 577 A.2d 39, 44 (1990); *State v. Jett*, 316 Md. 248, 251, 558 A.2d 385, 386 (1989); *Electronic Data v. Westmoreland Association*, 311 Md. 555, 555–56, 536 A.2d 662–63 (1988); *Harris v. Harris*, 310 Md. 310, 315–16, 529 A.2d 356, 358–59 (1987).

To fall within the collateral order exception, the " 'order must [ (1) ] conclusively determine the disputed question, [ (2) ] resolve an important issue[, (3 be] completely separate from the merits of the action, and [ (4) ] be effectively unreviewable on appeal from a final judgment.' " *Patux-*

*ent Valley,* 300 Md. at 206, 477 A.2d at 762, quoting *Clark v. Elza,* 286 Md. 208, 213, 406 A.2d 922, 925 (1979), quoting, with approval, *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 545–47, 69 S.Ct. 1221, 1225–26, 93 L.Ed. 1528, 1536–37 (1949), the seminal case on the collateral order doctrine.

Cases decided under the collateral order doctrine, like those addressed by the Maryland Rules on judgment finality, *see e.g. Quartertime Video v. Hanna,* 321 Md. 59, 64, 580 A.2d 1073, 1075 (1990); *Estep,* 320 Md. at 283–84, 577 A.2d at 80–81; *Rohrbeck v. Rohrbeck,* 318 Md. 28, 41, 566 A.2d 767, 773 (1989), ordinarily involve an attempt by a *party* to ongoing litigation to appeal an order entered in the course of that litigation, which does not, however, adjudicate all of the claims or all of the rights and liabilities of the parties involved. *But see Sigma Repro. Health Center, supra.* In that case, Sigma, a non-party to the criminal prosecution, moved to quash a subpoena for its records, filed by the defendant. When the trial court denied that motion, it appealed, reasoning that the collateral order doctrine applied to render the trial court's order final and appealable. Noting that "ordinarily an order denying a motion to quash a subpoena *duces tecum* in a pending case is not an appealable final order," 297 Md. at 675, 467 A.2d at 490, we held that the discovery order in that case was not appealable, but only after conducting the analysis required by the collateral order doctrine:

> First, the order to produce documents pursuant to the subpoena duces tecum is not completely separable from the merits of the criminal proceedings. As noted in *[United States v. ] Nixon,* 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 [ (1974) ], "[e]nforcement of a pretrial subpoena *duces tecum* must necessarily be committed to the sound discretion of the trial court since the necessity for the subpoena most often turns upon a determination of factual issues." 418 U.S. at 702, 94 S.Ct. at 3104[, 41 L.Ed.2d at 1060]. Second, the order to produce does not finally and conclusively determine Sigma's claim. Rath-

er, if Sigma had failed to comply with the order and had been cited for contempt, then there would have been a final order.... The denial of a motion to quash itself was not a final disposition. Third, although the order involved an important right—the privacy rights of Sigma and its patients—the right would not have been lost on appeal if Sigma had been cited for contempt.

297 Md. at 670–71, 467 A.2d at 488.

*Patuxent Valley, supra,* also decided upon a collateral order doctrine rationale, stands in stark contrast to *Sigma Repro. Health Center.*[8] In that case, subpoenas, which required them to appear for pretrial depositions, were issued to the individual Public Service Commissioners. The State of Maryland and the Public Service Commission, both parties to the ongoing action, moved to quash and, when that was unsuccessful, appealed. We pointed out, 300 Md. at 205 n. 2, 477 A.2d at 762 n. 2, that, but for a Maryland Rule, *see* Rule 2–403(a),[9] the appeal by the Commission and the State would have presented a standing issue; however, since the rule provided standing for a party who seeks protection from an order directed at a non-party, the issue in that case was appropriately one of finality.

### C.

The collateral order doctrine does not apply to the facts *sub judice. See United States v. Harrod,* 428 A.2d 30, 31–32 (D.C.App.1981) ("[A]n examination of the *Cohen* rationale confirms the implicit inference that *Cohen* was never intended to apply to court orders requiring production of

---

**8.** We continue of the view that the result in *Sigma Repro. Health Center* was correct. We no longer endorse the rationale used to reach it.

**9.** This rule permits protective orders to be filed by "a party or the party from whom discovery is sought." The plaintiffs in this case filed a motion in support of the appellant's motion for protective order in which they requested the court to "grant DSS' Motion for Protective Order and issue an Order quashing the defendant Stein's subpoena on deposition issued to DSS;" they did not, however, note an appeal from the denial of appellant's motion.

information from non-party witnesses (footnote omitted).") The appellant is not a party to the ongoing litigation in this case; it was brought into this case solely because of the appellee's perceived need to review records, pertaining to the plaintiffs, which he believes the appellant may have and maintain. And the appellant has brought this appeal solely because of its stake in preserving the confidentiality of its records, the order signed by the trial court requires it to disclose information pursuant to a statute whose purpose is to ensure the confidentiality of certain information the appellant is required to maintain. *See* discussion, *infra. See also Zaal v. State*, 326 Md. 54, 76, 602 A.2d 1247, 1258 (1992); *State v. Runge*, 317 Md. 613, 620, 566 A.2d 88, 91 (1989); *Freed v. Worcester County*, 69 Md.App. 447, 454, 518 A.2d 159, 162, *cert. denied*, 309 Md. 47, 522 A.2d 392 (1987), *appeal dismissed*, 484 U.S. 804, 108 S.Ct. 49, 98 L.Ed.2d 14 (1987). The appellant simply has no stake or interest, as a legal matter, in the merits of the tort action. Nor have the plaintiffs sought and been denied a protective order. *See* note 9, *supra.*

With regard to the appellant and the appellee, the ruling has all of the attributes of finality recognized by this Court: it settles the rights of the appellant and appellee in the records sought to be discovered, thereby, concluding that phase of the action, and it has been entered on the docket. *Estep*, 320 Md. at 282, 283, 577 A.2d at 80. *See also Rohrbeck*, 318 Md. at 41, 566 A.2d at 773; *In re Buckler Trusts*, 144 Md. at 427, 125 A. at 178. This is so even though the words, "final judgment," or the word, "judgment," has never been used. *See Houghton*, 305 Md. at 412–13, 504 A.2d at 1148. The discovery order in this case determined and concluded the appellant's rights and interests in the discovery issue and denied it the means of further prosecuting or defending them. *Rohrbeck, supra; Houghton*, 305 Md. at 412, 504 A.2d at 1148.

### D.

██ Notwithstanding the conclusive effect of the order as between the appellant and the appellee, the order is one

entered in the context of ongoing litigation, and, as to the appellee, may have significance during the progress of that litigation. Moreover, the order is one entered in a discovery matter. It is well settled in Maryland that discovery orders usually are not immediately appealable. *Sigma Repro. Health Center,* 297 Md. at 664–665, 467 A.2d at 485. The rationale for that rule was stated in *Patuxent Valley,* 300 Md. at 208, 477 A.2d at 763:

> ... "[o]rdinarily, an order granting or denying discovery does not finally determine the rights of any party...." *Alford v. Commissioner, supra,* 227 Md. [45,] 47, 175 A.2d 23[, 24 (1961)]. Also, in the usual case, the party or individual opposing the discovery order does not suffer sufficient immediate harm to warrant an appeal prior to the final termination of the litigation. Moreover, a party is generally able to seek effective review of the order upon an appeal from an adverse final judgment terminating the case.

*See also Price v. Orrison,* 261 Md. 8, 9, 273 A.2d 183, 184 (1971); *Kardy v. Shook,* 237 Md. 524, 534, 207 A.2d 83, 88 (1965); *Montgomery County Council v. Kaslow,* 235 Md. 45, 50, 200 A.2d 184, 186 (1964).

The Supreme Court has held that the finality, hence, appealability, of a discovery order is not determined by the status of the party against whom discovery is sought. In *Alexander v. United States,* 201 U.S. 117, 26 S.Ct. 356, 50 L.Ed. 686 (1906), officers of corporations sued by the United States government under the Sherman Anti–Trust Act, on whom, in both their professional and individual capacities, subpoenas *duces tecum* had been served, refused to produce the documents sought even after a special examiner appointed to hear and take testimony had ordered them to do so. Their appeal of the order to testify was improper, they argued, because "the orders of the circuit court constituted practically independent proceedings and amounted to a final judgment." 201 U.S. at 121, 26 S.Ct. at 358, 50 L.Ed. at 688. Rejecting that argument and finding the orders to be nonappealable, the Court reasoned:

In a certain sense finality can be asserted of the orders under review, so, in a certain sense, finality can be asserted of any order of a court. And such an order may coerce a witness, leaving to him no alternative but to obey or be punished. It may have the effect and the same characteristic of finality as the orders under review, but from such a ruling it will not be contended there is an appeal. Let the court go further and punish the witness for contempt of its order, then arrives a right of review, and this is adequate for his protection without unduly impeding the progress of the case. Why should greater rights be given a witness to justify his contumacy when summoned before an examiner than when summoned before a court? Testimony, at times, must be taken out of court. In instances like those in the case at bar the officer who takes the testimony, having no power to issue process, is given the aid of the clerk of a court of the United States; having no power to enforce obedience to the process or to command testimony, he is given the aid of the judge of the court whose clerk issued the process, and if there be disobedience of the process, or refusal to testify or to produce documents, such judge may "proceed to enforce obedience ... or punish the disobedience in like manner as any court of the United States may proceed in case of disobedience to like process issued by such court...." This power to punish being exercised the matter becomes personal to the witness and a judgment as to him. Prior to that the proceedings are interlocutory in the original suit. (citations omitted)

201 U.S. at 121–22, 26 S.Ct. at 358, 50 L.Ed. at 688. *See also United States v. Nixon*, 418 U.S. 683, 690–92, 94 S.Ct. 3090, 3098, 41 L.Ed.2d 1039, 1053–54 (1974); *United States v. Ryan*, 402 U.S. 530, 531, 91 S.Ct. 1580, 1582, 29 L.Ed.2d 85, 88–89 (1971). *Perlman v. United States*, 247 U.S. 7, 12–13, 38 S.Ct. 417, 419, 62 L.Ed. 950 (1918). The rationales underlying this rule—that, unless the subject of the order subjects him or herself to contempt, a denial of an order

granting or denying discovery in an ordinary civil or criminal action is not a final, appealable order—are:

> [t]o allow immediate review on the denial of a motion to quash a subpoena may produce an appeal that otherwise would not occur, since the case may be settled, or the party proposing to call the witness or the witness himself may have second thoughts. Also, ... postponing the appeal until the witness has placed himself in contempt would normally provide the appellate court with a record of just what questions the witness had been asked and refused to answer which is generally unavailable on the denial of a motion to quash.

*Kaufman v. Edelstein,* 539 F.2d 811, 814–15 n. 3 (2d Cir.1976).

### E.

We have declined to follow the *Alexander* rule, at least when, in the procedural posture of the case, the only matter before the trial court is the discovery order, *i.e.* the motion to quash. Thus, in *In re Special Investigation No. 244,* 296 Md. 80, 85, 459 A.2d 1111, 1113 (1983), (citing *In re Special Investigation No. 231,* 295 Md. 366, 370, 455 A.2d 442, 444 (1983)), noting that the proceedings consisted only of a petition to quash the subpoena duces tecum, we observed that "our consistent holding has been that a final judgment from which an appeal will rise is one which settles the rights of the parties or concludes the cause."[10] *See also In re Special Investigation No. 185,* 293 Md. 652, 655–56 n. 2, 446 A.2d 1151, 1154 n. 2 (1982), and cases therein cited. The rule has also been stated in *Unnamed Attorney*

---

10. Alternatively, we expressed our belief that a person, in this day and age, should not "be obliged to decide whether he should risk contempt in order to test the validity of a subpoena duces tecum, particularly where, as here, the person to whom the subpoena is directed may not be one of the targets of the investigation but a possibly innocent custodian." *In re Special Investigation, No. 244,* 296 Md. 80, 86, 459 A.2d 1111, 1114 (1983).

*v. Attorney Grievance Commission*, 303 Md. 473, 480, 494 A.2d 940, 944 (1985):

It has consistently been held in this State that where a court proceeding is commenced to quash or to enforce an administrative subpoena, summons, search warrant, or similar process issued by an administrative agency or official, where the court refuses to quash or orders enforcement, and where the court's order terminates the *court* proceeding, the order is final and appealable. The fact that the *administrative* proceedings may not be terminated does not render the court order interlocutory if nothing remains to be done in the trial court. We have rejected the argument that, in this situation, one must be adjudged in contempt of the court order in order to obtain appellate review.

This case does not involve an administrative subpoena and, moreover, the proceedings out of which it arose are still pending before the trial court. Consequently, this case is more akin to *Alexander* and *Sigma Repro. Health Center*, both *supra*, than to the special investigation cases out of which the rule just quoted arose. Moreover, the facts of this case are not consistent with those upon which the Supreme Court formulated an exception to the *Alexander* rule. The subpoenaed material is not in the hands of a third party who could not be expected to subject him or herself to contempt in order that the owner of the material may take an immediate appeal. *See Perlman v. United States*, 247 U.S. 7, 12–13, 38 S.Ct. 417, 419, 62 L.Ed. 950, 955 (1918). *See also In re Search Warrant* (sealed) 810 F.2d 67, 70 (3rd Cir.1987); *State of Illinois v. F.E. Moran, Inc.*, 740 F.2d 533, 536–37 (7th Cir.1984). Nor, even though the Director of the Baltimore City Department of Social Services is undoubtedly, or at least arguably, a "high-level government decision maker", does the official to whom the subpoena is directed occupy a position so lofty as that of the President of the United States. In *United States v. Nixon*, 418 U.S. 683, 691–92, 94 S.Ct. 3090, 3099, 41 L.Ed.2d 1039, 1054 (1974), the Supreme Court made clear that "[t]o require a

President of the United States to place himself in the posture of disobeying an order of a court merely to trigger the procedural mechanism for review of the ruling would be unseemly...."

### F.

Although, as we have seen, it was decided on the basis of the collateral order doctrine, our analysis in *Patuxent Valley* is nevertheless instructive as to the issues *sub judice.* We made clear, in that case, that "we continue to adhere to the general rule that discovery orders are interlocutory and ordinarily cannot be appealed prior to a final judgment terminating the case." 300 Md. at 207, 477 A.2d at 763. Then, having stated the reasons for the general rule, we contrasted the facts in *Patuxent Valley* and, focusing on the last of the collateral order doctrine factors, observed:

[T]he harm that will result from deposing Commission members prior to trial, should they be immune from this type of scrutiny, will occur from the instant they are subjected to a probing of their decision making processes. Furthermore, the harm to the State and its agencies, and consequently to the public, because of the disruption of the governmental process which could result from orders such as this, is potentially much greater than the harm to private individuals and entities.

300 Md. at 208, 477 A.2d at 762. We concluded that "discovery orders, directed at other than high level government decision makers, are ordinarily not appealable in accordance with the general rule." 300 Md. at 210, 477 A.2d at 764. In holding that exceptional circumstances existed making an immediate appeal appropriate in that case, we distinguished the immediate appealability of the order in that case from that in an "ordinary" discovery case, analogizing the former to that of a governmental official, who, in defense of a civil action, claims immunity. *Patuxent Valley*, 300 Md. at 209, 477 A.2d at 764, citing *Nixon v. Fitzgerald*, 457 U.S. 731, 742–43, 102 S.Ct. 2690, 2697–98, 73 L.Ed.2d 349, 358–59 (1982); *Forsyth v. Kleindienst*, 700

F.2d 104, 105 (3rd Cir.1983); *McSurely v. McClellan,* 697 F.2d 309, 315–16 (D.C.Cir.1982). *See also Mitchell v. Forsyth,* 472 U.S. 511, 524–30, 105 S.Ct. 2806, 2814–17, 86 L.Ed.2d 411, 424–27 (1985); *Harlow v. Fitzgerald,* 457 U.S. 800, 806 n. 11, 102 S.Ct. 2727, 2732 n. 11, 73 L.Ed.2d 396, 403 n. 11 (1986); *Andreu v. Sapp,* 919 F.2d 637, 638–39 (11th Cir.1990); *P.C. v. McLaughlin,* 913 F.2d 1033, 1039–40 (2nd Cir.1990); *Simpson v. Hines,* 903 F.2d 400, 402 (5th Cir.1990); *Givens v. Jones,* 900 F.2d 1229, 1231 (8th Cir. 1990); *McDaniel v. Woodard,* 886 F.2d 311, 313 (11th Cir.1989); *Compania Mexicana De Aviacion v. U.S. Dist. Court,* 859 F.2d 1354, 1358 (9th Cir.1988). Unless that official were permitted to have his claim of immunity reviewed prior to being required to obey a court order rejecting it, we opined, the claim of immunity would be forever lost. *Id.* To have held otherwise would have made useless the purpose of immunity—protecting the official from the burden of an unnecessary trial, *id.,* and "to shield government officials from 'the risks of trial—distraction of officials from their governmental duties, inhibition of discretionary action, and deterrence of able people from public service should be.' " *McSurely v. McClellan,* 697 F.2d at 316.

## G.

A similar rationale is applicable to the confidentiality claim asserted by the appellant in this case. A governmental agency charged, by statute, with ensuring the confidentiality of the records it is required to maintain,—their disclosure being determined by the agency alone or by court order—occupies a position quite similar to that of the government official claiming immunity. Were appellate review of the court's order that the records be disclosed be deferred until after disclosure has been made, the purpose of the statute would be frustrated and the confidentiality claim would be forever lost. Discovery of the contents of the agency file is itself the harm to be avoided. Once the

file has been disclosed, an appellate court will be unable to provide effective relief. *See Patuxent Valley, supra.*

In the case *sub judice,* the answer to the questions, whether the Social Services' file may be discovered by the appellee, and, if so, what is the proper procedure for reviewing them for relevant evidence?, and by whom?, depends upon an interpretation of Article 88A § 6, an issue separate from the merits of the tort action. Article 88A, § 6 will have significance on the tort action only if the interpretation given it makes the Social Services' files available for review, in some fashion. At that point the admissibility, or inadmissibility, of evidence that file may contain will have to be determined on the basis of its relevance to the issues in the tort action.

Moreover, aside from the fact that the harm will have already occurred, unless permitted to do so now, the appellant may never be able to obtain review of the discovery order; consequently, the need to resolve the issue at the time that it arises, rather than as if an integral part of the merits, is critical. An appeal after the trial of the merits has concluded may have no effect on the decision rendered and may well be moot; it may not be possible for the matter to be resolved, at least meaningfully, on an appeal from the final judgment in the underlying action. See *Mann v. State's Atty. for Mont. County,* 298 Md. 160, 165, 468 A.2d 124, 126 (1983) in which, like *Patuxent Valley,* we recognized, based upon the collateral order doctrine that the order permitting the media and the State to interview the defendant would be effectively unreviewable on appeal from a final judgment in the criminal case "since by that time it could well be too late to cure any damage done by whatever is revealed in the interviews."

■ We hold that a discovery order directed to a governmental agency, a non-party to the underlying action, requiring the disclosure of files which contain information which, by statute, is confidential except when disclosed by the agency or by court order, is immediately appealable by the

agency. The harm which will occur to the agency and the public—the potential inability of the agency to acquire information essential to its mission—were we to hold otherwise is much greater than it would be for private individuals and entities. This is consistent with the result reached by other jurisdictions addressing similar issues. *Kerttula v. Abood*, 686 P.2d 1197, 1200–01 (Alaska 1984) (allowing a non-party to appeal the denial of a motion to quash a subpoena where the issue presented was an important one of first impression and "relief [was] not available from any other court and [could not have been] obtained through the process of appeal, petition for review, or petition for hearing"); *Foor v. Huntington Nat. Bank*, 27 Ohio App.3d 76, 499 N.E.2d 1297, 1300 (1986) (applying rule permitting appeal from orders in special proceedings affecting a substantial right, which requires a balancing test, "weighing the harm to the prompt and orderly disposition of litigation against the need for immediate review because of impracticality of appeal after final judgment," court found order denying former attorney's motion to quash subpoena *duces tecum* to produce documents in file in which he had a "retaining lien" to be unique circumstances meriting appeal). *See also In re F.E.F.*, 156 Vt. 503, 594 A.2d 897, 900–01 (1991). *But see Harrod*, 428 A.2d 30.

 That, prior to seeking appellate review, neither the appellant nor its custodian of records was held in contempt for the refusal to disclose the files sought is neither fatal to, nor dispositive of, the appellant's right to appeal. The appellant's right to appeal is not dependent upon its being held in contempt. The rationale for requiring a contempt finding as a prerequisite to allowing a nonparty to seek, and receive, appellate review of the denial of a motion to quash a subpoena *duces tecum* is to ensure the separability of the issue from the merits and that it is an important one. As *Sigma Repro. Health Cen.*, 297 Md. at 671, 467 A.2d at

$488,[11]$ put it:

> only an appeal from a contempt order, as opposed to an order to produce documents pursuant to the subpoena, is final enough and separable enough from the merits to confer the power of review on an appellate court.

*See also Kaufman,* 539 F.2d at 814–15 n. 3.

The Baltimore City Department of Social Services is bound by Art. 88A, § 6 and its purpose, pursuant to which it is required to maintain the confidentiality of its files. It is not simply a matter of personal concern to the director, or the employees of the Department, that unauthorized disclosures be avoided; it is a matter of legislative, and public, policy.

A critical concern when an exception to the finality rule is sought to be made, as reflected by the collateral order doctrine cases, is that the issue sought to be reviewed is an important one, which is effectively unreviewable otherwise. Such requirements, especially when coupled with the rule that the appealability of a discovery order by a non-party requires a contempt finding, also ensure that the asserted basis for an appeal is not a "sham," *see In re Search Warrant (Sealed),* 810 F.2d at 70, and that the party prosecuting it has a sufficient stake in the appeal's outcome. Insofar as the appellant is concerned, these concerns are met and they are met without the necessity of a contempt finding. The Legislature has made clear that the confidentiality of the appellant's records is an important issue; it is both a matter of public record and of legislative intent. Pursuing an appeal to comply with that policy is not a sham. The additional step of contempt, therefore, is unnecessary.

---

**11.** That case was a criminal proceeding and we addressed the issue in that context. *See Sigma Repro. Health,* 297 Md. at 670–71, 467 A.2d at 488. We see no meaningful distinction between criminal and civil proceedings insofar as the appealability of the denial of the motion to quash a subpoena *duces tecum* is concerned.

The appellant's custodian of records is its director. Although the director of the Baltimore City Department of Social Services is not so high an official as the President of the United States, he or she is nevertheless on a par with the individual Public Service Commissioners in *Patuxent Valley*. As such, he or she is a sufficiently "high-level government decision maker," we hold, as to whom it would be "unseemly", *Nixon, supra,* to require subjection to a finding of contempt before appellate review of the propriety of a discovery order directed to him, or her, will be allowed. All that requiring the appellant's director to subject him-or herself to a finding of contempt would accomplish would be to make the judgment personal as to the director and, thereby insure that, from the director's perspective, the issue is taken seriously and prosecuted vigorously. As we have already noted, however, that is not necessary where the need to prosecute the confidentiality issue is a matter of Legislative intent and public policy.

The appellee contends that the order is not appealable because the federal due process claim has not been decided finally and the petitioner has not been found in contempt of court. As to the former, it is clear that the order finally has resolved the scope and breadth of Art. 88A § 6. It does not matter on what basis that decision was made so long as the confidentiality requirement of § 6 has been determined to be of insufficient importance to prevent disclosure.

### III.

■ Turning to the merits, we address whether the Social Services records of a minor child, the plaintiff in a personal injury action, and those of his parents, in the possession of the appellant, are discoverable by the appellee. Resolution of the issue requires an analysis of the scope of Art. 88A, § 6. By its express terms, § 6 limits disclosure of "any information concerning any applicant for or recipient of" certain social services programs or benefits, subsection (a), and of "records and reports concerning child abuse or neglect", Subsection (b). Subsection (b), which expressly

states that such records "are confidential", and makes their unauthorized disclosure a criminal offense. Thus, while permitting disclosure via court order, the statute provides precious little guidance as to when a court order should issue.

In *State v. Runge*, 317 Md. 613, 566 A.2d 88 (1989), this Court considered the purpose of § 6. We said that it was, "in a larger societal sense, to provide for confidentiality, and in a narrower sense, to conform to the mandates of federal law," *id.* at 620, 566 A.2d at 91; it "was never intended to be a vehicle to permit the willy-nilly disclosure of the very records the Legislature sought to keep confidential." *Id.*, quoting *Freed v. Worcester County*, 69 Md.App. at 454, 518 A.2d at 162. Because the occasion was not there presented, we did not apply any external disclosure aids to test the scope and breadth of the statute.

The issue in this case is different from that addressed in *Runge* and in *Pennsylvania v. Ritchie*, 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987). In *Runge*, the question was "the extent to which ... Article 88A, § 6, subsection (b), requires disclosure of a county department of social services' files to a criminal defendant charged with child abuse." *Runge*, 317 Md. at 614, 566 A.2d at 88 (footnote omitted). In *Ritchie*, the issue was "whether and to what extent a State's interest in the confidentiality of its investigative files concerning child abuse must yield to a criminal defendant's Sixth and Fourteenth Amendment right to discover favorable evidence." 480 U.S. at 42–43, 107 S.Ct. at 993–94, 94 L.Ed.2d at 48. The issue presented here, however, is one of first impression: whether, and to what extent, a state's interest in the confidentiality of its social services record must yield to a civil defendant's right to discover favorable evidence bearing on his threatened loss of property.

Citing *In re Cager*, 251 Md. 473, 482, 248 A.2d 384, 389–90 (1968), the appellant maintains that the purpose of Article 88A, § 6 is the promotion of "full and frank communication between those needing social services and those providing that assistance by protecting the confidentiality of both

discussions and correspondence." Because the information in the files is personal and there still is a stigma attached to those who seek social services, one seeking assistance is likely to hesitate to report personal information if it were known that what he or she divulged easily would, or could, be disclosed. *See Ritchie*, 480 U.S. at 60, 107 S.Ct. at 1003, 94 L.Ed.2d at 59. Moreover, the appellant argues that § 6 limits disclosure of file information to that which is relevant to proceedings before the court. In its view, that section cannot be circumvented on a mere possibility that it *might* possess records which *may* be relevant or *may* lead to the discovery of the admissible evidence in a case involving a personal injury accident or, as here, lead paint poisoning. In this case, the appellant maintains that, since the appellee's proffer was not sufficient to indicate that the appellant's files contained any evidence, either directly relevant to the proceeding before the court or that would lead to such evidence, the files should not be disclosed. The appellant relies on *Bowman Dairy Company v. United States*, 341 U.S. 214, 220–21, 71 S.Ct. 675, 678–79, 95 L.Ed. 879, 884–85 (1951) (disclosure should not occur when the record reflects simply that the party seeking disclosure is on a "fishing expedition to see what may turn up.").

Furthermore, the appellant argues that, in any event, the discovery granted was too broad. Rather than ordering complete disclosure of all files, the court first should have reviewed the records for potentially relevant information. Permitting blanket disclosure, the appellant contends, disregards entirely the privacy rights of the plaintiffs and those from whom social service or health care practitioners may have obtained much of the information contained in those records. It is also violative of the legislative intent reflected in § 6. Moreover, the blanket order passed in this case apparently assumed, from the nature of the records, that they were possibly relevant to the civil action before the court.

The appellee responds that his property interest entitles him to as much protection of the due process clause of the

Fourteenth Amendment as does the liberty interest of a criminal defendant. Thus, he says, the plaintiffs, having alleged physical, mental, and emotional injury as a result of the housing he provided may not suppress information contained in records maintained by a State agency, necessary to rebut those allegations. Because "[d]ue process requires that there be an opportunity to present every available defense," *Lindsey v. Normet,* 405 U.S. 56, 66, 92 S.Ct. 862, 870, 31 L.Ed.2d 36, 46 (1972), the appellee contends that denying him the discovery necessary to present an available defense denies him due process of law.

Our recent opinion in *Zaal v. State,* 326 Md. 54, 602 A.2d 1247 (1992), *albeit* a criminal case, is instructive. There, Zaal was charged with sexually abusing his granddaughter. In an effort to develop evidence with which to impeach her, he subpoenaed her school records. The Board of Education, however, refused to comply with the subpoena. Zaal proffered the relevance of the records, which we summarized as follows:

Because, he noted, he was aware that the victim had an emotional disability requiring special education and he denied her allegations, the case would likely turn on the victim's credibility. Therefore, he continued, it was necessary that he be able to attack her credibility and, specifically, to explore her motivation, bias and veracity. This would not be possible, he proffered, "without access to some records indicating the nature and extent of the child's disability." Moreover, he suggested that the records might reveal "a pattern of behavior pre-existing that would impinge upon [the victim's] believability in the statement." In fact, that the victim was in a "special classroom" as a result of an "emotional disturbance" bears, he asserts, on whether there was "a physical basis that would relate to her capacity to observe and relate" or "a mental deficiency leading to an inability to control actions." Furthermore, petitioner noted "the extreme antagonism [that] had existed for a number of years between himself and the victim's father," contending that

the victim's awareness of that hostility may indicate a bias on her part which caused her to fabricate the incident.

*Id.* at 62–63, 602 A.2d at 1251.

Rather than allowing Zaal, through his attorney, to review the records, the court conducted an *in camera* review, after which, it granted the Board's motion to quash. Concluding that " 'there is really nothing I can see that in any significant way would relate to truth telling to this or to any other occasion' and, certainly, nothing 'show[ing] an inveterate tendency to lie,' " 326 Md. at 63, 602 A.2d at 1251, the court explained that to allow discovery could significantly compromise the child's educational future. The Court of Special Appeals, relying heavily on *Ritchie, supra,* affirmed. Finding the issues and the decisional factors in *Ritchie* to be different, we reversed and remanded. Our analysis involved balancing Zaal's "need to inspect" against the privacy interests involved.

We equated "need to inspect" with relevance and the existence of "a reasonable possibility that review of the records would result in discovery of usable evidence." 326 Md. at 81, 602 A.2d at 1260. Agreeing with the State, we acknowledged that "[u]ntil [the "need to inspect"] threshold was crossed, ... the extent of access to the records could not be addressed; it could not be decided whether safeguards short of turning the entire file over to the petitioner for his unrestricted use were possible." *Id.,* 602 A.2d at 1260–61.

This Court also noted that the defendant's need to have access to the records in that case entailed consideration of several factors: the nature of the charges brought against the defendant, and, the relationship between the charges, the information sought, and the likelihood that review of the records would result in the discovery of relevant information. *Id.* at 81–82, 602 A.2d at 1261. In that regard, we stated that the circumstances will determine whether a sufficient relationship exists to require disclosure and, of course, that, in turn, will depend upon "the proffer of

relevance that the defendant makes." *Id.* at 82, 602 A.2d at 1261. We also said:

And how specific the proffer is with respect to what is sought will have a direct bearing on whether direct access to the records, by the defendant or his or her representative, is necessary; the more specific the information sought to be uncovered, the less the necessity for direct access.

*Id.*

Another relevant factor was the issue before the court. Again, we said that the defendant's proffer of what was sought to be uncovered was critical. We recognized that "[t]he specificity of the proffer of what is sought necessarily depends on the nature of the issue, rather than the extent of the defendant's knowledge of the contents of the records." *Id.* Implicitly, therefore, we acknowledged that the nature of the issue, rather than the specificity of the proffer, will determine whether the records require review by the advocate's eye. *Id.*

On the other hand, we were sensitive to the need to ensure that the victim's privacy interests were neither overlooked nor infringed. *See* 326 Md. at 83, 602, A.2d at 1262.

"How significant that concern is, however, depends directly on the options available to the court; to the extent that the court has only two options—*in camera* review by the court alone or ordering unqualified access of the records to the accused—vindication of the victim's privacy rights may require a more restrictive attitude with respect to the accused's access to the victim's records. If there are other options, an intermediate position, perhaps, the accused's access may be expanded."

*Id.* at 84, 602 A.2d at 1262.

Relying on *Commonwealth v. Stockhammer*, 409 Mass. 867, 570 N.E.2d 992, 1002 (1991), we held that "[a]n expanded *in camera* proceeding, one in which counsel for the defense and the State participate or permitting the review of the records by counsel in their capacity as officers of the

court are acceptable alternatives." 326 Md. at 86, 602 A.2d at 1263. Thus, counsel may be given access to the records "in the presence of the trial court, or alone, either as officers of the court, or under a court order prohibiting disclosure to anyone, including the defendant, of anything in the records unless expressly permitted by the court." *Id.* In cases involving sensitive information, but where the issue requires it, use of an expanded *in camera* proceeding ensures that the defendant will have the benefit of the advocate's eye in the review of the records.[12] *Id.* at 86–87, 602 A.2d at 1263.

We also provided some guidance as to when an expanded *in camera* proceeding should be used:

Which option the court chooses must depend on various factors, including the degree of sensitivity of the material to be inspected; the strength of the showing of the "need to inspect"; whether the information sought is readily identifiable; considerations of judicial economy, etc. The greater the "need to inspect" showing, *i.e.*, as here, where it is self-evident, and the less sensitive the information, for example, the more likely the records will be reviewed jointly by the court and counsel or by counsel as officers of the court.

*Id.* at 87, 602 A.2d at 1264. We did not, of course, preclude the trial court, in an appropriate case, from conducting an *in camera* review alone. That, however, ordinarily should not be the first option.

This is a civil, not a criminal, case. Nevertheless, the stakes involved are high. Although no "charges" have been lodged against the appellee, the civil equivalent, "causes of action" permits a party to seek recovery of monetary relief. In that sense, the causes of action are

---

12. The appellant has expressed concern that allowing its records to be subpoenaed without a proffer requiring the trial court to review them for relevance places a tremendous burden on the trial judge since many of the records are quite thick. An expanded *in camera* proceeding would alleviate that concern; the court could, under an appropriate order, permit counsel to conduct the review.

extremely serious. Indeed, the plaintiffs seek to recover millions of dollars from the appellee.

If the plaintiffs are to prevail in this action, they must prove that the appellee is responsible for the minor plaintiff's lead poisoning; they must show that the appellee's acts of commission, or omission, proximately caused the minor plaintiff's injury. They must also demonstrate the effects, present and future, of that injury; they have to prove to what extent the minor plaintiff was damaged. The plaintiffs have alleged that, in addition to having to undergo painful testing and treatment, the minor plaintiff "has suffered serious developmental and behavioral injuries" and is expected to undergo "pain, anguish, mental distress, and temporary and permanent physical, mental and developmental injury." It was to rebut these allegations as well as the allegation that he proximately caused the injury that the appellee sought to compel the appellant to release any records it has on the plaintiff and his family. To the extent that the records contain information bearing on the child's behavior, particularly during the relevant period, the trier of fact will be able to assess whether that behavior was caused by lead poisoning or something else. The appellee has alleged a potential and plausible relationship between the records and the plaintiffs' causes of action. He has proffered, given the circumstances, a "need to inspect," that is, "a reasonable possibility that review of the records would result in discovery of usable evidence." *Zaal*, 326 Md. at 81, 602 A.2d at 1260.

The appellee's proffer is not overly specific. That is to be expected, however, since the appellee has not seen the records and cannot possibly know what is in them. Moreover, the defense that the appellee seeks to raise is quite similar to credibility. As with credibility, whether information will be useful in rebutting the plaintiff's case or impeaching the plaintiff "depends upon the circumstances, including context, and, to a large extent, the perception of the person interpreting it." *Zaal*, 326 Md. at 82, 602 A.2d at 1261.

As we did in *Zaal*, we conclude that the appellee's proffer is not frivolous, and, indeed, "placed before the court the [appellee's] legitimate concerns and gave plausibility to his stated need to review the records for relevant information." *Id.* at 83, 602 A.2d at 1262. He has crossed the "need to inspect" threshold.

The plaintiffs' privacy concerns are, as we have seen, protected by § 6. Thus, there should be no greater disclosure allowed than is necessary to meet the "need to inspect" shown by the appellee. That extent can only be determined upon review of the records. In that regard the options we identified in *Zaal* are available for use in making that review.

The trial court ordered the appellant to release any records it had on the plaintiffs to the appellee without a hearing and, so far as this record reveals, without itself having reviewed the records for relevant information. Because we have already determined that the appellee's proffer was not frivolous and, indeed, indicated a legitimate "need to inspect," in so doing, it gave insufficient consideration to the confidentiality policy of § 6. The court erred. Accordingly, we reverse the judgment of the circuit court granting unrestricted disclosure of the appellants' files and remand for further proceedings, consistent with the principles enunciated in Part VI of *Zaal*, 326 Md. at 81–87, 602 A.2d at 1260–63.

JUDGMENT REVERSED. CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE CITY FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION.

COSTS IN THIS COURT TO BE EQUALLY DIVIDED BETWEEN THE PARTIES.